UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HSIN-HUI KUO, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| | § | CIVIL ACTION NO. _____ |
| Plaintiff, | § § | |
| v. | § § | **JURY TRIAL DEMAND** |
| METROCORP BANCSHARES, INC., GEORGE M. LEE, DON J. WANG, Y. PING SUN, HELEN F. CHEN, MAY P. CHU, SHIRLEY LIU CLAYTON, JOHN LEE, CHARLES L. ROFF, DAVID TAI, JOE TING, ROBERT W. HSUEH, KRISHNAN BALASUBRAMANIAN, DANIEL B. WRIGHT, and EAST WEST BANCORP, INC., | § § § § § § § § § § § | |
| Defendants. | § | |

## CLASS ACTION COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Hsin-Hui Kuo ("Plaintiff"), by his attorneys, brings the following class action on behalf of himself and all stockholders of MetroCorp Bancshares, Inc. ("MetroCorp" or the "Company"), other than Defendants and their affiliates, against MetroCorp, certain officers and members of MetroCorp's board of directors (the "Board"), and East West Bancorp, Inc. ("East West"), for breaching their fiduciary duties (or aiding and abetting thereof) in connection with East West's proposed acquisition of the remaining interest of MetroCorp. Plaintiff also brings this action individually for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). The allegations of the Complaint are based on information and

belief, including investigation of counsel and review of publicly available information, except for Plaintiff's own acts, which are alleged on personal knowledge.

## SUMMARY OF THE ACTION

1.     On September 18, 2013, MetroCorp and East West announced a definitive Agreement and Plan of Merger (the "Merger Agreement") under which East West will acquire all outstanding shares of stock of MetroCorp (the "Proposed Transaction").  Pursuant to the Proposed Transaction, MetroCorp's stockholders will receive the lesser of $14.60 per share and 1.72 times the per share tangible equity, as adjusted, for each MetroCorp share of stock they currently own.  MetroCorp stockholders will receive two-thirds of the merger consideration in stock and the rest in cash.

2.     As described below, both the value to MetroCorp stockholders contemplated in the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and all other public stockholders of the Company.

3.     Specifically, the Proposed Transaction is the result of a deficient sales process aimed at depriving MetroCorp stockholders of the true value of their common shares.  For example, the entire due diligence examination of both MetroCorp and East West took *only nine (9) days* to complete over a holiday weekend.  The Board likewise only "informally" asked the Company's financial advisor, Sandler O'Neill & Partners, L.P. ("Sandler O'Neill"), to perform a cursory market check by reaching out to "a few" strategic partners.  In fact, the Merger Agreement is the improper byproduct of the social relationship between East West Chief Executive Officer ("CEO") Dominic Ng and Defendant George M. Lee ("G. Lee"), MetroCorp's CEO and Co-Chairman of the Board, rather than the result of an arm's length negotiation aimed at maximizing the value for MetroCorp stockholders.  Tellingly, G. Lee stands to receive over

*$2.5 million* and continued employment with the merged entities once the Proposed Transaction is consummated.

4.      As a result, the merger consideration per share is unfair and inadequate in light of the fact that MetroCorp's net income is improving quarter-by-quarter and the Company is poised to generate future financial growth.  In fact, at least one analyst has set a price target of $15 for the Company, well above the highest possible consideration of $14.60.

5.      The Individual Defendants' (as defined herein) conduct thereby constitutes a breach of their fiduciary duties owed to MetroCorp's public stockholders, and a violation of applicable legal standards governing their conduct.   Indeed, in facilitating the Proposed Transaction for inadequate consideration and through a flawed sales process, each of the Defendants breached and/or aided the other defendants' breaches of their fiduciary duties of loyalty, due care, good faith, and candor.

6.      The Individual Defendants have further exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making successful competing offers for the Company.   Specifically, the Board agreed to: (i) a no-solicitation provision that requires the Company to terminate any ongoing discussions with other potential acquirers and from pursuing any alternative to the Proposed Transaction; (ii) an "information rights" provision that requires MetroCorp to disclose to East West the identity of any competing bidder; (iii) a "matching rights" provision that provides East West with five (5) business days to match any competing proposal in the unlikely event that one emerges; and (iv) a provision that requires the Company to pay MetroCorp a termination fee of 3% of the final transaction consideration.  These provisions conjunctively and

improperly restrain the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives to the Proposed Transaction.

7.      On October 28, 2013, MetroCorp and East West filed a Form S-4 Registration Statement (the "Registration Statement") with the Securities and Exchange Commission (the "SEC"), which further misrepresents and fails to disclose material information necessary for the Company's stockholders to make an informed decision as to whether to vote their shares in favor of the Proposed Transaction.  Specifically, the Registration Statement fails to disclose, in violation of both the Board's duty of candor under state law and Section 14(a) and 20(a) of the Exchange Act, (i) certain median consensus earnings estimates relied upon by Sandler O'Neill to perform and render its fairness opinion; (ii) certain information regarding Sandler O'Neill's financial analysis to render its fairness opinion; and (iii) several important details regarding the process leading up to the signing of the Merger Agreement, including whether Sandler O'Neill stands to receive any additional fees if the Proposed Transaction is consummated.

8.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (defined below) from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties of loyalty, due care, good faith, and candor.

### JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under Sections 14(a) and 20(a) of the Exchange Act.  The Court has supplemental jurisdiction over any claims arising under the state law pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because MetroCorp is incorporated in Texas and has its primary place of business in this District.

11.     In connection with the acts alleged in this Complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff is, and has been at all relevant times, the owner of MetroCorp common stock and has held such shares since prior to the wrongs complained of herein.

13.     MetroCorp is a Texas corporation with its principal executive offices located at 9600 Bellaire Boulevard, Suite 252, Houston, Texas, 77036.   MetroCorp is a bank holding company.   MetroBank, N.A. (MetroBank) and Metro United Bank ("Metro United"), as wholly-owned subsidiaries of MetroCorp, offer personalized banking services to the communities in the Houston, Dallas, San Diego, Los Angeles, and San Francisco metropolitan areas.   Historically, the Company has strategically opened banking offices in areas with large multicultural and Asian concentrations and pursues branch opportunities in multicultural markets with significant small and medium-sized business activity.   MetroCorp common stock trades on the NASDAQ Global Select Market under the ticker symbol "MCBI."

14.     Defendant G. Lee has served as a director of the Board since March 1999 and was elected to serve as Executive Vice Chairman of the MetroCorp Board in September 2003.   G. Lee is the President and Chief Executive Officer ("CEO") of MetroCorp since July 2004.   G. Lee is also the CEO of MetroBank since July 2004 and Chairman of Metro United since October 2005.

15.     Defendant Don J. Wang ("Wang") is the as Chairman of the Board and MetroBank since 2008.  Wang is also the brother of Helen F. Chen.

16.     Defendant Y. Ping Sun ("Sun") has served as a director of the Board since 2012.

17.     Defendant Helen F. Chen ("Chen") has served as a director of the Board since 1998.  Chen is also the sister of Wang.

18.     Defendant May P. Chu ("Chu") has served as a director of the Board since 1998. She is also the Chairman of the Board's Audit Committee and is a member of the Compensation Committee.

19.     Defendant Shirley Liu Clayton ("Clayton") has served as a director of the Board since 2004.  She is also a member of MetroCorp Board's Audit and Governance and Nominating Committees.

20.     Defendant John Lee ("J. Lee") has served as a director to the Board since 1998.  J. Lee is also the brother-in-law of David Tai.

21.     Defendant Charles L. Roff ("Roff") has served as a director of the Board since 2003 and is a member of MetroCorp Board's Governance and Nominating Committee.

22.     Defendant David Tai ("Tai") has served as a director of the Board since 1998. Tai is also the Executive Vice President and Secretary of the Company and President of MetroBank.  Tai is also the brother-in-law of J. Lee.

23.     Defendant Joe Ting ("Ting") has served as a director of the Board since 1998 and is a member of the Board's Compensation Committee and is the Chairman of the Governance and Nominating Committees.

24.     Defendant Robert W. Hsueh ("Hsueh") has served as a director of the Board since 2007 and is a member of the Board's Governance and Compensation Committee.

25.     Defendant Krishnan Balasubramanian ("Balasubramanian") has served as a director of the Board since 2007.  He is also a member of the Board's Compensation Committee and is the Chairman of the Compensation Committee.

26.     Defendant Daniel B. Wright ("Wright") has served as a director of the Board since 2011 and was previously a director from 2001 to 2007.

27.     Defendants G. Lee, Wang, Sun, Chen, Chu, Clayton, J. Lee, Roff, Tai, Ting, Hsueh, Balasubramanian, and Wright are collectively referred to hereinafter as the "Individual Defendants."

28.     Defendant East West is a Delaware corporation with its principal executive offices located at 135 N. Los Robles Avenue, 7th Floor, Pasadena, California, 91101.  East West is a bank holding company.  East West offers a range of personal and commercial banking services to small and medium-sized businesses and individuals through its subsidiary East West Bank.  East West common shares trade on the NASDAQ Global Select Market under the ticker symbol "EWBC."

29.     The Individual Defendants, MetroCorp, and East West are referred to as "Defendants."

**THE FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

30.     By reason of the Individual Defendants' positions with the Company as directors and/or officers, said individuals are in a fiduciary relationship with Plaintiff and the other public stockholders of MetroCorp and owe Plaintiff and the other members of the Class the duties of loyalty, due care, good faith, and candor.

31.     By virtue of their positions as directors and/or officers of MetroCorp, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause MetroCorp to engage in the practices complained of herein.

32.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's stockholders, and with due care.  To diligently comply with these duties, the directors of a corporation may not take any action that:

a.      Adversely affects the value provided to the corporation's stockholders;

b.      Contractually prohibits them from complying with or carrying out their fiduciary duties;

c.      Discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

d.      Will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's stockholders.

33.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to Plaintiff and the other public stockholders of MetroCorp, including their duties of loyalty, due care, good faith, and candor.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all holders of MetroCorp common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

35.     This action is properly maintainable as a class action because:

a.      The Class is so numerous that joinder of all members is impracticable.  As of August 1, 2013, MetroCorp had 18,700,028 shares of common stock outstanding.  The holders of these shares are believed to be geographically dispersed through the United States;

b.      There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members.  The common questions include, *inter alia*, the following:

  i.  Whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, due care, good faith, and candor with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

  ii.  Whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

  iii.  Whether the Individual Defendants have disclosed and will disclose all material facts in connection with the Proposed Transaction,

  iv.  Whether East West aided and abetted the Individual Defendants' breaches of fiduciary duty;

  v.  Whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets; and

  vi.  Whether Plaintiff and the other members of the Class would suffer irreparable injury were the transaction complained of herein consummated.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual

members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### A.     Background

36.     MetroCorp operates as the holding company for MetroBank and Metro United, which provide commercial banking services in Texas and California.  The Company offers a variety of deposit products and services and provides various loan products.  Additionally, MetroBank and Metro United also engage in government guaranteed small business lending and specialize in small business administration loans to minority-owned businesses.  As of April 19, 2013, the Company operated thirteen full-service banking locations in Houston and Dallas; and six full service banking locations in San Diego, Los Angeles, and San Francisco.

37.     Over the past year, MetroCorp has demonstrated strong prospects for future growth and earnings.

38.     On July 20, 2012, the Company reported its financial results for the second quarter of 2012 ("2Q 2012").  For 2Q 2012, MetroCorp reported net income of $2.6 million, an increase of 11.1% compared to the same quarter in 2011.  In a press release to stockholders, Defendant G. Lee stated the following:

> The Company's second quarter performance was again encouraging, marked by distinct and steady progress in key financial metrics.  NPA was reduced by $8.8 million from $57.4 million to $48.6 million between the quarters ending March 31, 2012 and June 30, 2012, bringing the ratio of NPA to total assets to 3.13%, inching closer to the 3% goal we had set for the end of 2012.  The trend for loan growth also indicated evidence of meaningful traction.  Total loans grew on a linked-quarter basis by nearly $48 million from $1.05 billion at the end of the first

quarter to $1.09 billion at the end of the second quarter of 2012.  With the recent addition of lending and credit staff in both Texas and California, we will strive to achieve moderate and sustainable loan growth over time to support our earnings.  In the meantime, earnings remain stable with net income of $2.6 million for the second quarter of 2012 as compared to $2.8 million for first quarter of 2012.

In addition to the above, the Company was successful with a follow-on public offering which raised approximately $43.0 million of new capital, net of expenses.  The new capital has been deployed to repurchase slightly over 97% of TARP-related Fixed Rate Cumulative Perpetual Preferred Stock, Series A ("Preferred Stock") through the U.S. Treasury auction during the last week of June 2012.  Also, as an after event, the Board of Directors of Metro United Bank in California was officially informed that the Consent Order has been lifted.  ***We are certainly glad to see that the hurdles created by the recent financial crisis have been resolved methodically one at a time.  We have had a very productive second quarter of operation***.  (Emphasis added).

39.     On October 19, 2012, MetroCorp again reported strong financial results, this time for the third quarter of 2012 ("3Q 2012").  For 3Q 2012, the Company reported net income of $2.9 million, a 27% increase from the same period in 2011.  In a press release to stockholders, Defendant G. Lee touted the following:

The Company's third quarter 2012 performance was in line and consistent with management's 2012 annual objectives.  Our goal for 2012 was to establish a solid platform for the years ahead, and management is pleased with the Company's third quarter performance.   Net income of $2.9 million, linked-quarter loan growth of $2.6 million, nonperforming assets at $48.2 million and net interest margin at 3.84% for the third quarter of 2012 were all modestly ahead or stable on a linked-quarter basis as compared to the second quarter of 2012.

***The loan pipeline going forward is solid***; however competition is fierce in both the Texas and California markets.  ***Management will strive to complete the year 2012 toward our target of mid-high, single-digit loan growth compared with year end 2011, and a ratio of nonperforming assets to total assets below 3%***.  (Emphasis added).

40.     On January 25, 2013, MetroCorp reported financial results for the fourth quarter of 2012 ("4Q 2012") and full fiscal year 2012.  For 4Q 2012, the Company reported net income of $2.8 million, as compared to a loss of $328,000 for the same period in 2011.  For fiscal year 2012, MetroCorp highlighted the total net income of $11.1 million for 2012, a whopping

increase of 73% as compared to fiscal year 2011.  In a press release to stockholders, Defendant

G. Lee stated the following:

> *As reflected by the Company's fourth quarter 2012 financial performance,*
> *management was able to deliver what it had set out to accomplish for 2012*.  We
> are especially pleased with the improvements made to the Company's asset
> quality, with the ratio of nonperforming assets to total assets declining to 2.73%,
> which was meaningfully below the 3% mark we had targeted for the year.  Net
> income for the year, net interest margin trend and capital ratios remained stable
> and were on target or slightly improved.  Net loan growth of $59.5 million or
> 5.8% for the 12 months ended December 31, 2012 was also encouraging given the
> fact that during the year of 2012 management was still pursuing an intensive plan
> to reduce classified assets while balancing the Company's loan concentration.
> The $3.5 million growth in total loans during the fourth quarter of 2012 is a
> positive sign of what we believe will be a healthy loan pipeline going forward.
> Our core deposits were stable and grew 4.2% from year-end 2011, but more
> significantly, noninterest bearing deposits ("DDA") grew $50.3 million or 19.4%
> from year-end 2011.  DDA now makes up 24.4% of total deposits at year-end
> 2012 compared with 17.2% two years ago at year-end 2010.
>
> *We believe that the general economy of the markets we serve has been*
> *improving steadily, both in Texas and California.  Management is prudently*
> *optimistic about 2013 but will remain very focused and will strive to fine tune*
> *our business platform, make improvements in key operating areas and grow the*
> *Company's asset base*.  (Emphasis added).

41.     The Company continued its stellar growth in the first quarter of 2013 ("1Q

2013").  On April 19, 2013, MetroCorp reported net income of $3 million, a 9.4% increase from

the same period in 2012.  Again, Defendant G. Lee praised the Company's financial performance

in a press release by stating the following:

> Management is pleased with and encouraged by the Company's first quarter 2013
> performance.  Key financial trends and results in terms of earnings, asset quality,
> loan growth and capital ratios improved overall as compared with the fourth
> quarter of 2012 and the first quarter of 2012. . . . [T]he Company has made
> meaningful progress in all areas of performance.  *We have met and in some cases*
> *exceeded our objectives, especially with respect to asset quality improvement*.
> (Emphasis added).

42.     Finally, on July 19, 2013, for the second quarter of 2013, MetroCorp reported net

income of $2.8 million, representing a 6.5% increase over net income for the same quarter in

2012.  Additionally, total loans grew $78.0 million or 7.1% to $1.18 billion at June 30, 2013 compared with $1.10 billion at December 31, 2012.

43.     However, rather than permitting the Company's stock to trade freely and allowing its public stockholders to reap the benefits of the Company's growth strategy, the Individual Defendants have acted for their personal benefit and to the detriment of the Company's public stockholders, by entering into the Merger Agreement.

**B.     The Proposed Transaction**

44.     On September 18, 2013, MetroCorp and East West issued a joint press release announcing that they had entered into the Merger Agreement.  The press release stated:

> **Pasadena, CA and Houston, TX—September 18, 2013**—East West Bancorp, Inc. ("East West") (Nasdaq: EWBC), parent company of East West Bank, and MetroCorp Bancshares, Inc. ("MetroCorp") (Nasdaq: MCBI), parent of MetroBank, N.A. and Metro United Bank, announced today that they have entered into a definitive agreement for the merger of MetroCorp into East West.
>
> MetroCorp operates 18 branches under its two subsidiary banks, MetroBank and Metro United Bank. MetroBank operates 12 branches in Houston and Dallas, and Metro United Bank operates 6 branches in Los Angeles, San Francisco and San Diego.  As of June 30, 2013, MetroCorp reported, on a consolidated basis, total assets of $1.6 billion, total loans of $1.2 billion and total deposits of $1.3 billion.
>
> . . . .
>
> George M. Lee, Co-Chairman, President and Chief Executive Officer of MetroCorp stated, "We are pleased to have reached an agreement to merge with East West. As one of the top performing banks in the nation, East West has the balance sheet, scale and expertise to provide strong value for MetroCorp's shareholders, customers and employees.  Additionally, East West and MetroCorp share the same values and vision, making this combination a cultural fit as well."
>
> Under the terms of the definitive agreement, East West will acquire the outstanding shares of MetroCorp for the lesser of $14.60 per share and 1.72 times the per share tangible equity, as adjusted, for an aggregate purchase price of approximately $273 million based on the 18,699,638 shares currently outstanding. The shareholders of MetroCorp will receive two thirds of the merger consideration in shares of East West common stock and the remainder in cash. The exchange ratio for determining the number of shares of East West common stock deliverable to shareholders of MetroCorp will be based on the weighted

average closing price of East West's common stock over a 60 trading day
measurement period ending five days prior to the closing.

The transaction, which has been unanimously approved by the East West and
MetroCorp Boards of Directors, is expected to be completed during the first
quarter of 2014, although delays may occur. The transaction is subject to
customary closing conditions, including approval by MetroCorp shareholders and
regulatory approvals.

The transaction is expected to be 4% accretive to East West's 2014 full year
earnings, excluding any one-time merger and restructuring charges.

### C.      The Deficient Sales Process

45.      The Proposed Transaction is the result of a deficient sales process aimed at

depriving MetroCorp stockholders of the true value of their common shares.   The entire

transaction only came to fruition because of the social relationship between Dominic Ng, East

West's CEO, and G. Lee, MetroCorp's CEO.   The Board here was never interested in

performing a proper market check for the Company and only asked Sandler O'Neill to perform

an illusory review by reaching out to "a few" strategic partners.

46.      Additionally, G. Lee stands to profit handsomely from the Proposed Transaction.

For instance, immediately after the Proposed Transaction, East West intends to terminate the

employment agreement between MetroCorp and G. Lee entered into in 2012.  As a result, G. Lee

will be entitled to receive from East West (i) his base salary for the remainder, if any, of the

calendar month in which such termination is effective and an additional lump sum payment equal

to three years' salary, (ii) an amount equal to three times his incentive compensation for the

previous fiscal year, and (iii) life insurance premiums for two years following such termination

and medical insurance premiums until the earlier of two years following such termination and the

expiration of East West's obligation to offer such coverage under applicable law.  In addition, all

of G. Lee's outstanding options to purchase MetroCorp common stock will become fully vested

and all restrictions on outstanding restricted stock will be cancelled.  The total value resulting from the Proposed Transaction to G. Lee is approximately $2,548,870.

47.     In addition to the change-of-control benefits, G. Lee entered into a senior advisor consulting agreement with East West Bank for a term of 12 months, entitling him to receive an annual fee of $400,000 payable in bi-monthly installments.

48.     Yet, despite the taint of impropriety arising from the relationship between Ng and G. Lee, the Board did not form a special litigation committee to consider the Proposed Transaction and allowed G. Lee to spearhead the merger process.  Indeed, the entire due diligence examination by both MetroCorp and East West took place from August 26, 2013 to September 4, 2013, *i.e.*, for only nine (9) days over the Labor Day weekend.

49.     These long standing relationships between Ng and G. Lee, in combination with the lack of any true process to shop the Company and the lucrative payments and position to be obtained by G. Lee following the consummation of the merger, cast doubt on the process leading to the announcement of the Proposed Transaction and the price offered by East West to MetroCorp's stockholders.

### D.     The Unfair Share Price

50.     Rather than allow MetroCorp's common stock to trade freely and permit its public stockholders to share in the benefits of the Company's improving growth prospects, the Individual Defendants have acted for the benefit of East West, and to the detriment of the Company's public stockholders, by entering into the Proposed Transaction.  In so doing, the Individual Defendants have agreed to a transaction that places a cap on MetroCorp's corporate value at a time when the Company is primed for substantial future growth.  Indeed, at least one analyst has set a price target of $15 for the Company, well above the highest possible consideration of $14.60.

51.     The consideration offered to MetroCorp's public stockholders in the Proposed Transaction is thus unfair and inadequate because, among other things, the intrinsic value of MetroCorp's common stock is materially in excess of the amount offered for those securities in the Proposed Transaction given the Company's prospects for future growth and earnings.

**E.      The Unreasonable Deal Protection Devices**

52.     On September 18, 2013, the Company filed a Form 8-K with the SEC wherein it disclosed the terms of its Merger Agreement.  To the detriment of MetroCorp stockholders, the Individual Defendants agreed to certain deal protection devices that operate conjunctively to ensure that the Proposed Transaction is successful and no competing offers will emerge for the Company.

53.     Specifically, Section 5.5(a) of the Merger Agreement is a restrictive no-solicitation provision that prohibits the members of the Board from taking any affirmative action to comply with their fiduciary duties to get the best price for MetroCorp stockholders, including initiating, soliciting, encouraging, or facilitating any inquiries or proposals and engaging or participating in any negotiations or discussions concerning an "Acquisition Proposal" (defined in the Merger Agreement).

54.     Section 5.5(b) of the Merger Agreement provides a limited situation in which the MetroCorp Board may enter into discussions and negotiations in response to an unsolicited "Superior Proposal" (as defined in the Merger Agreement).  The Superior Proposal must be one that (a) was not the result of any breach of, or any action inconsistent with any of the provisions set forth in Section 5.5(a) of the Merger Agreement and (b) the Board concludes in good faith, after having consulted with its outside legal counsel, that failure to take such action would reasonably constitute a breach of the fiduciary duties of the Board to the Company's stockholders under applicable law.

55.     Even then, however, in the event the Company receives an "Acquisition Proposal," MetroCorp must notify East West, orally and in writing, at least one (1) day after receipt, of the identity and material terms of the person making the "Acquisition Proposal."

56.     Thereafter, if the Board determines that the competing "Acquisition Proposal" constitutes a "Superior Proposal," (defined in the Merger Agreement), Section 9.1(e) requires the Board to grant East West at least five (5) business days to amend the terms of the Merger Agreement to make a counter-offer that the Company must consider in determining whether the competing bid still constitutes a "Superior Proposal."

57.     Furthermore, the Merger Agreement provides that MetroCorp must pay to East West a termination fee of 3% of the final merger consideration if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the stockholders with a superior offer.

58.     Ultimately, these deal protection devices restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.   The circumstances under which the Board may respond to an unsolicited alternative acquisition proposal that constitutes, or would reasonably be expected to constitute, a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.   Likewise, these provisions will foreclose the new bidder from providing the needed market check of East West's inadequate offer.

**F.     The Materially Misleading Registration Statement**

59.     On October 28, 2013, MetroCorp and East West filed the Registration Statement with the SEC.   The Registration Statement failed to provide the Company's stockholders with material information in contravention to the Board's duty of candor and in violation of Sections 14(a) and 20(a) of the Exchange Act.

60.     Without such information, MetroCorp's stockholders will be unable to make a fully-informed decision as to whether to vote their shares for or against the Proposed Transaction.

### 1.     Materially Incomplete and Misleading Statements/Omissions Regarding Median Consensus Earnings Estimates

61.     The Registration Statement fails to disclose the source of median consensus earnings estimates for MetroCorp and East West that Sandler O'Neill used to estimate the earning for the years ending December 31, 2013 and December 31, 2014.  This omission is material because without this information, MetroCorp's stockholders are unable to fully understand Sandler O'Neill's analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

### 2.     Materially Incomplete and Misleading Disclosures Concerning Sandler O'Neill's Financial Analysis

62.     The Registration Statement also discloses certain information regarding Sandler O'Neill's financial analyses used to support its fairness opinion.  These disclosures concerning Sandler O'Neill's financial analyses are materially incomplete and misleading in several ways.

63.     First, the Registration Statement, on pages 46 to 47, fails to disclose the multiples observed by Sandler O'Neill for the list of regional banks and thrifts it selected to compare against MetroCorp in the *Comparable Companies Analysis*.  The Registration Statement also fails to disclose why Sandler O'Neill applied historical multiples in the *Comparable Company Analysis* for MetroCorp or what were the implied value ranges resulting from the analysis. These omissions are material because without this information, MetroCorp's stockholders are unable to fully understand Sandler O'Neill's analysis and, thus, are unable to determine what

weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

64.     Second, the Registration Statement, on pages 47 to 48, fails to disclose the multiples observed by Sandler O'Neill for the list of banks it selected to compare against East West in the *Comparable Companies Analysis*.  The Registration Statement also fails to disclose why Sandler O'Neill applied historical multiples in the *Comparable Company Analysis* for East West or what were the implied value ranges resulting from the analysis.  These omissions are material because without this information, MetroCorp's stockholders are unable to fully understand Sandler O'Neill's analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

65.     Third, the Registration Statement, on pages 48 to 49, fails to disclose the transaction multiples observed by Sandler O'Neill in the *Selected Merger Transactions* analysis.  This omission is material because without this information, MetroCorp's stockholders are unable to fully understand Sandler O'Neill's analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

66.     Fourth, the Registration Statement, on pages 49 to 50, omits the criteria used by Sandler O'Neill for selecting the Earnings Per Share ("EPS") multiples of 12.0x to 22.0x and Tangible Book Value Multiples ranging from 100% to 225% in the *Net Present Value Analysis* for MetroCorp.  This omission is material because without this information, MetroCorp's stockholders are unable to fully understand Sandler O'Neill's analysis and, thus, are unable to

determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

67.      Fifth, the Registration Statement, on pages 50 to 51, omits the criteria used by Sandler O'Neill for selecting the EPS multiples of 13.0x to 23.0x and the Tangible Book Value Multiples ranging from 125% to 250% in the *Net Present Value Analysis* for East West.  These omissions are material because without this information, MetroCorp's stockholders are unable to fully understand Sandler O'Neill's analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

68.      Sixth, the Registration Statement fails to disclose the rationale for why Sandler O'Neill applied certain market assumptions in calculating MetroCorp's discount rate (page 49), yet determined East West's discount rate using certain other market assumptions (page 50).  This omission is material because without this information, MetroCorp's stockholders are unable to fully understand Sandler O'Neill's analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

69.      Finally, the Registration Statement fails to provide on page 52 in the *Pro Forma Merger Analysis* the specific calculations of how accretive the Proposed Transaction will be to East West's full-years earnings ending December 31, 2014, December 31, 2015, and December 31, 2016.

### 3.      Materially Incomplete and Misleading Disclosures Regarding the Flawed Process

70.      The Registration Statement also omits several important details regarding the process leading up to the signing of the Merger Agreement.

71.     For example, on page 38, the Registration Statement discloses that in 2011, "MetroCorp engaged an investment bank to explore a possible combination with East West" but that "[n]o formal or informal agreement relating to a potential transaction resulted at that time." The Registration Statement thus omits what investment bank the Board contacted to evaluate the possible combination of MetroCorp with East West in 2011 or what the results of that evaluation were.  This information is material because it is not known to MetroCorp stockholders whether this unknown investment bank placed a high premium on MetroCorp shares, thereby evincing that the Board is now selling the Company for significantly less consideration than it could have acquired in 2011.  Additionally, the Registration Statement does not explain why no agreement was reached on a potential transaction in 2011.  This information is material because it reveals why East West did not acquire the Company in 2011 and instead waited until 2013 to enter into the Proposed Transaction.

72.     Also on page 38, the Registration Statement cryptically discloses that "[o]n July 29, 2013, MetroCorp informally asked Sandler O'Neill to contact a few possible strategic partners to gauge their proclivity for a combination with MetroCorp.  These contacts did not result in any serious indications of interest."  The Registration Statement fails to disclose how many "strategic" partners were actually contacted or why the Board elected not to contact any financial buyers.  This information is material because it evinces the process the Board took to obtain the best price possible under the circumstances, or whether the Board merely sought to improperly sell the Company to East West without performing a true market check.

73.     On page 39, the Registration Statement discloses that after the Board met on August 20, 2013, "Mr. Lee notified East West that all 11 of the 13 members of the board of directors unable to attend the meeting approved the letter of intent, and that the two board

21

members of the board of directors unable to attend the meeting conveyed their oral support of the letter of intent, and the two members of the board of directors unable to attend the meeting conveyed their oral support of the letter of intent.  The Registration Statement goes on to disclose that the "board of directors also approved the engagement of Sandler O'Neill to advise MetroCorp and render a fairness opinion."  The Registration Statement fails to disclose the identity of the two members of the Board who were not present August 20, 2013 meeting or whether these two members approved of the engagement of Sandler O'Neill.  Likewise, the Registration Statement also does not disclose how many investment banks the Board considered prior to engaging Sandler O'Neill.  This information is material because it evinces the process the Board took to obtain the best price possible under the circumstances, or whether the Board merely sought to improperly sell the Company to East West without performing a true market check.

74.     Finally, on Page 52, the Registration Statement discloses that MetroCorp agreed to pay Sandler O'Neill "$400,000 upon the rendering of its fairness opinion to the board of directors of MetroCorp."  The Registration Statement however omits to disclose what, if any, contingent compensation Sandler O'Neill stands to receive if the Proposed Transaction is consummated.  This information is material because it evinces if Sandler O'Neill had any conflict of interest when it issued the fairness opinion in support of the Proposed Transaction.

75.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff and the Class Against the Individual Defendants
### for Breach of Fiduciary Duties

76.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

77.    The Individual Defendants have violated fiduciary duties of loyalty, due care, good faith, and candor owed to MetroCorp stockholders.

78.    By the acts, transactions, and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in MetroCorp.

79.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, due care, good faith, and candor owed to MetroCorp stockholders because, among other reasons, they failed to take steps to obtain the best price possible under the circumstances, by, among other things, failing to adequately consider potential acquirers, instead favoring their own, or their fellow directors' or executive officers' interests to secure all possible benefits with a friendly suitor, rather than protect the best interests of MetroCorp stockholders.  Moreover, the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding whether to vote in favor of the Proposed Transaction.

80.    By reason of the foregoing acts, practices and courses of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

81.     As a result of the actions of Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of MetroCorp's assets and businesses and have been and will be prevented from obtaining a fair price for their common shares of stock.

82.     Unless the Court enjoins Defendants, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

83.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

### COUNT II

**On Behalf of Plaintiff and the Class Against MetroCorp and/or East West for Aiding and Abetting the Individual Defendants' Breach of Fiduciary Duty**

84.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

85.     MetroCorp and/or East West have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to MetroCorp stockholders, and have participated in such breaches of fiduciary duties.

86.     MetroCorp and/or East West knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, MetroCorp and/or East West rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

87.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

**COUNT III**

**On Behalf of Plaintiff Against MetroCorp, East West, and the Individual Defendants for Violations of Section 14(a) of the Exchange Act**

88.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

89.     Plaintiff brings this Exchange Act claim on behalf of himself as an individual only.

90.     MetroCorp, East West, and the Individual Defendants have caused the Registration Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

91.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC]  may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

92.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

93.     By virtue of the foregoing, MetroCorp, East West, and the Individual Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9.  The Registration Statement violates Section 14(a) and SEC Rule 14a-9 because it omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, MetroCorp, East West, and the Individual Defendants should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render then non-misleading.

94.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the stockholder vote on the Proposed Transaction.

### COUNT IV

**On Behalf of Plaintiff Against the Individual Defendants for Violations of
Section 20(a) of the Exchange Act**

95.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

96.     Plaintiff brings this Exchange Act claim on behalf of himself as an individual only.

97.     The Individual Defendants acted as controlling persons of MetroCorp within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of MetroCorp, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

98.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

99.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

100.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

101.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

102.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

103.    As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment against Defendants jointly and severally, as follows:

A.      Declaring this action to be a Class Action and certifying Plaintiff as the Class representatives and her counsel as Class counsel;

B.      Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for the Company's stockholders;

C.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.      Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance for attorneys' and expert fees and expenses; and

F.      Granting Plaintiff and other members of the Class such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  October 31, 2013.

Respectfully submitted,


_____/s/ Thomas E. Bilek_____

THOMAS E. BILEK
TX Bar No. 02313525 / SDTX Bar No. 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720
FAX (713) 227-9404

*Attorneys for Plaintiff*


**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Juan E. Monteverde
369 Lexington Avenue, Tenth Floor
New York, NY  10017
Tel:  212-983-9330
Fax:  212-983-9331
Email: jmonteverde@faruqilaw.com