UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re METROCORP BANCHSARES, INC. SHAREHOLDER LITIGATION | § | |
| | § | No. 4:13-cv-03198 |
| This Document Relates to: | § | |
| ALL ACTIONS | § | |

**LEAD PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND AWARD OF ATTORNEYS' FEES AND EXPENSES**

# TABLE OF CONTENTS

I. INTRODUCTION ........ 2

II. BACKGROUND OF THE LITIGATION........ 5

III. THE SETTLEMENT TERMS........ 10

IV. THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED........ 12

A. The Fifth Circuit Favors Settlement of Class Actions and Presumes Fairness of Settlements Negotiated and Supported by Experienced and Competent Counsel........ 12

B. The Settlement Is Fair, Reasonable, and Adequate ........ 14

1. There Was and Is No Fraud or Collusion in Connection with the Settlement ........ 15

2. The Complexity, Expense, and Likely Duration of this Litigation Supports the Settlement ........ 16

3. The Stage of Proceedings and the Amount of Discovery Completed Weighs in Favor of Settlement........ 19

4. The Probability of Success on the Merits and the Possible Range of Recovery Supports the Settlement........ 20

a. The Damages Claim........ 20

b. The Disclosure Claims........ 23

i. Material Disclosures Concerning the Process and Price Negotiations with East West........ 25

ii. Material Information Regarding Sandler O'Neill's Financial Analyses........ 24

5. The Opinion of Plaintiffs' Counsel and Settlement Class Members........ 26

V. THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23(a)........ 27

A. The Numerosity Requirement Is Satisfied........ 27

B. The Commonality Requirement Is Satisfied........ 28

C. The Typicality Requirement Is Satisfied ........ 28

D. The Adequacy Requirement Is Satisfied........ 28

E. The Proposed Settlement Satisfies Rule 23 (b)........ 29

VI. THE COURT SHOULD GRANT PLAINTIFFS' REQUEST FOR REASONABLE ATTORNEYS' FEES AND EXPENSES........ 31

A. Plaintiffs Conferred a Substantial Benefit on MetroCorp Unitholders........ 32

B. Fee Awards in Similar Cases and the Rates Charged in Similar Litigation ........ 36

C. The Experience, Reputation, and Ability of the Lawyers Performing the Services, the Time Limitations, and the Preclusion of Accepting Other Employment........ 38

D. The Time and Labor Required, the Novelty and Difficulty of the Questions Involved, and the Skill Requisite to Perform the Legal Service Properly........ 39

E. Plaintiffs' Counsel Litigated the Consolidated Action on a Fully Contingent Basis........ 40

VII. CONCLUSION........ 40

# TABLE OF AUTHORITIES

**Cases**

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG (SSx), 2013 U.S. Dist. LEXIS 155091 (C.D. Cal. Oct. 25, 2013)........................................ 29

*Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270 (Del. 1994)........................................ 25

*Ahearn v. Fibreboard Corp*., 162 F.R.D. 505 (N.D. Tex. 1995)........................................ 26

*Ayer v. Thompson*, 358 F.3d 356 (5th Cir. 2004)........................................ 12, 30

*Berens v. Marshall & Isley Corp.*, et al., No. CV 021273 (Milwaukee Cnty. Cir. Ct. Wis. June 19, 2012)........................................ 35

*Blum v. Stenson*, 465 U.S. 886, 895 (1984)........................................ 36, 37

*Boeing Co. v. Van Gernert*, 444 U.S. 472 (1980)........................................ 32

*Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763 (N.D. Ohio Sept. 11, 2011)........................................ 15

*Call4U, Ltd. v. Goodman Global, Inc.*, No. 2007-66888, slip op. (Harris Cnty. Tex. May 13, 2009)........................................ 35

*Collier v. Brightpoint, Inc.*, C.A. No. 1:12-cv-1016 (TWP)(DKL) (S.D. Ind. May 1, 2013)...... 35

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)........................................ 12, 13

*Culpepper v. Reynolds Metals Co.*, 442 F.2d 1078 (5th Cir. 1971)........................................ 31

*DeHoyos v. Allstate Corp*., 240 F.R.D. 269 (W.D. Tex. 2007)........................................ 13, 14

*Dow Jones & Co. v. Shields*, No. 184, 1991, 1992 Del. Ch. LEXIS 24 (Del. Ch. Jan. 10, 1992) 31

*Fisher Bros. v. Cambridge-Lee Indus., Inc*., 630 F. Supp. 482 (E.D. Pa. 1985)........................................ 26

*Fountain v. Avondale Indus.*, No. 95-1198, 1996 U.S. Dist. LEXIS 5045 (E.D. La. Apr. 18, 1996)........................................ 32, 33

*Garza v. Sporting Goods Props.*, No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009 (W.D. Tex. Feb. 6, 1996)........................................ 13, 20

*Gilbert v. MPM Enters., Inc.*, 709 A.2d 663 (Del. Ch. 1997);........................................ 16

*Gilmartin v. Adobe Res. Corp.*, No. 12467, 1992 Del. Ch. LEXIS 80 (Del. Ch. April 6, 1992) . 17

*Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153 (N.D. Tex. 2010)........................................ 28

*Hensley v. Eckerhart*, 461 U.S. 424 (1983),........................................ 30, 32, 36

*IBEW Local 164 Pension Fund v. Hewitt Assocs., Inc.*, No. 10 CH 31612, slip op. (Cook Cnty. Ill. Cir. Ct. Feb. 15, 2011)........................................ 36

*In re Aeroflex S'holders Litig.*, No. 003943/2007, slip op. Nassau Cnty., N.Y. June 30, 2009).. 35

*In re Appraisal of Shell Oil Co.*, No. 8080, 1990 Del. Ch. LEXIS 199 (Del. Ch. Dec. 11, 1990)16

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000)). ........... 15

*In re Compellent Tech., Inc. S'holder Litig.*, Consol. C.A. No. 6084-VCL (Del. Ch., Dec. 9, 2011) ........ 34

*In re Dell, Inc., Sec. Litig.*, No. A-06-CA-726-SS, 2010 U.S. Dist. LEXIS 58281 (W.D. Tex. June 11, 2010) ........ 38

*In re Delphi Corp. Sec., Deriv. & ERISA Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008) ........ 38

*In re El Paso Corp. S'holders Litig.*, 41 A.3d 432 (Del. Ch. 2012) ........ 22

*In re FLS Holdings, Inc. S'holders Litig.*, No. 12623, 1993 Del. Ch. LEXIS 57 (Del. Ch. Apr. 2, 1993) ........ 33

*In re Ikon Office Solutions*, 194 F.R.D. 166 (E.D. Pa. 2000) ........ 32

*In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) ........ 20

*In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 U.S. Dist. LEXIS 136962 (S.D. Ohio Aug. 18, 2009) ........ 30

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 U.S. Dist. LEXIS 6621 (E.D. La. May 18, 1994) ........ 39

*In re Pure Res., Inc. S'holders Litig.*, 808 A2d 421, 449 (Del. Ch. 2002) ........ 24

*In re Staples, Inc. S'holders Litig.*, 792 A.2d 934 (Del. Ch. 2001). ........ 17, 33

*In re Talley Indus., Inc. S'holders Litig.*, No. 15961, 1998 Del. Ch. LEXIS 53 (Del. Ch. Apr. 13, 1998) ........ 33

*In re UICI S'holders Litig.*, No. 05-09693, slip op. (Dallas Cnty. Tex. Nov. 16, 2006) ........ 35

*In re Wm. Wrigley Jr. Co. S'holders Litig.*, No. 3750-VCL, 2009 Del. Ch. LEXIS 12 (Del. Ch. Jan. 22, 2009) ........ 22, 34

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ........ 16

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ........ 16

*Jinks v. Mays*, 464 F.2d 1223 (5th Cir. 1972) ........ 31

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ........ 39

*Kahn v. Sullivan*, 594 A.2d 48 (Del. 1991) ........ 16

*Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290 (W.D. Pa. 1997) ........ 16

*Lightbourn v. Cnty. of El Paso*, 118 F.3d 421 (5th Cir. 1997). ........ 27

*Lohocky v. Tidel Techs., Inc.*, 220 F.R.D. 491 (S.D. Tex. 2004) ........ 28

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) ........ 17

*Major v. Treen*, 700 F. Supp. 1422 (E.D. La. 1988) ........ 37

*Manchaca v. Chater*, 927 F. Supp. 962 (N.D. Tex. 1996) ........ 19

*David P. Simonetti Rollover IRA v. Margolis*, 2008 Del. Ch. LEXIS 78(Del. Ch. June 27, 2008) ........ 24

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175 (Del. Ch. 2010) .......... 24

*McKittrick v. Gardner*, 378 F.2d 872 (4th Cir. 1967)............................................................... 39

*McNary v. Am. Sav. & Loan Ass'n*, 76 F.R.D. 644 (N.D. Tex. 1977)................................... 13, 14

*Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426 (5th Cir. 1977) ......................................... 12

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) .................................................................. 32

*Milstein v. Huck*, 600 F. Supp. 254 (E.D.N.Y. 1984) ................................................................. 16

*Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620 (5th Cir. 1999) ....................................... 27

*Murillo v. Tex. A&M Univ. Sys.*, 921 F. Supp. 443 (S.D. Tex. 1996) ........................................ 13

*In re Netsmart Technologies, Inc. Shareholder Litigation*, 924 A.2d 171 (Del. Ch. 2007) ......... 24

*Nichting v. DPL, Inc.*, No. 3:11-cv-141 (S.D. Ohio Feb. 24, 2012) ............................................ 35

*PaineWebber R & D Partners II, L.P. v. Centocor, Inc.*, No. 14405, 2000 Del. Ch. LEXIS 12 (Del. Ch. Jan. 31, 2000). ......................................................................................................... 31

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982) .................................................................... 14

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986)). .................. 37

*Plumbers Local #65 Pension Fund v. Nicor Inc.*, No. 10-CH-52627, slip op. (Cook Cnty. Ill. Cir. Ct. Dec. 7, 2011)...................................................................................................................... 36

*Pompano Beach Police & Firefighters' Ret. Sys. v. Odyssey Healthcare, Inc.*, No. CC-10-03561-E, slip op. (Dallas Cnty. Tex. May 18, 2012) ............................................................... 35

*Powell v. Comm'r of Internal Revenue*, 891 F.2d 1167 (5th Cir. 1990)..................................... 37

*Purdie v. Ace Cash Express, Inc.*, No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547 (N.D. Tex. Dec. 11, 2003) ................................................................................................................ 15

*Quintanilla v. A & R Demolition Inc.*, No. H-04-1965, 2008 U.S. Dist. LEXIS 37449 (S.D. Tex. May 7, 2008).......................................................................................................................... 26

*Ranger Ins. Co. v. Algie*, 482 F.2d 861 (5th Cir. 1973)............................................................... 31

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983)............................................... 13, 14

*Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992)............................................................... 36

*Rodriguez v. Countrywide Home Loans, Inc.*, 695 F.3d 360 (5th Cir. 2012). ............................. 29

*Salinas v. Roadway Express, Inc.*, 802 F.2d 787 (5th Cir. 1986). ............................................... 14

*Spencer v. Comserv Corp.*, No. 4-84-794, 1986 U.S. Dist. LEXIS 15863 (D. Minn. Dec. 30, 1986) ......................................................................................................................................... 36

*Stein v. Pactiv Corp.*, No. 10-CH-35455, slip op. (Cook Cnty. Ill. Cir. Ct. Apr. 26, 2011)......... 36

*Stott v. Capital Fin. Servs.*, 277 F.R.D. 316 (N.D. Tex. 2011).................................................... 27

*Sugarland Indus. v. Thomas*, 420 A.2d 142 (Del. 1980); ........................................................... 31

*Turberg v. ArcSight*, No. 5821-VCL (Del. Ch. Sept. 20, 2011) .................................................. 24

*Unger v. Amedisys, Inc.*, 401 F.3d 316 (5th Cir. 2005) .................................................................. 28

*United States v. Tex. Educ. Agency*, 679 F.2d 1104 (5th Cir. 1982) ............................................. 13

*United Vanguard Fund v. TakeCare, Inc.*, 693 A.2d 1076 (Del. 1997) ........................................ 31

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). ............................................................ 29

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96 (2d. Cir. 2005) ..................................... 26

*Weeks v. S. Bell Tel. & Tel. Co.*, 467 F.2d 95 (5th Cir. 1972) ...................................................... 31

*Young v. Katz*, 447 F.2d 431 (5th Cir. 1971) ................................................................................ 13

**Other Authorities**

*National Law Journal 2013 Billing Survey* .................................................................................. 36

**Rules**

Fed. R. Civ. P. 23(b)(2); ................................................................................................................. 29

Fed. R. Civ. P.23(b)(1)........................................................................................................... 29, 30

Rule 23 (a),...................................................................................................................................... 29

Tex. Disciplinary R. Prof'l Conduct Rule 1.04(b).......................................................................... 31

**Treatises**

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002) .......... 12

Plaintiffs Hsin-Hui Kuo and Michael Paganini (collectively, "Lead Plaintiffs"), who at all relevant times were stockholders of MetroCorp Bancshares, Inc. ("MetroCorp" or the "Company"), respectfully submit this motion and memorandum in support of Plaintiffs' application for: (i) final approval of the settlement ("Settlement") of the above captioned consolidated action (the "Consolidated Action" or the "Actions") whose terms and conditions are set forth in the Stipulation of Settlement executed by the Settling Parties[1] and dated July 18, 2014 (the "Stipulation")[2]; (ii) final certification of a non-opt-out class[3] (the "Settlement Class") of all record holders and beneficial owners of any share(s) of MetroCorp at any time beginning on and including September 18, 2013 through and including January 17, 2014; and (iii) an award of reasonable attorneys' fees and expenses not to exceed $425,000 for services rendered by Plaintiffs' Counsel[4] in the successful prosecution and Settlement of the Actions. For the reasons

---

[1] Except as otherwise expressly provided below, all capitalized terms shall have the same meaning and/or definitions as set forth in the Stipulation.

[2] A copy of the Stipulation is attached as Exhibit 1 to the Declaration of Thomas E. Bilek ("Bilek Decl.") filed herewith.

[3] The parties have stipulated to the certification of the following Settlement Class for Settlement purposes only:

> Plaintiffs and any and all record holders and beneficial owners of any shares(s) of MetroCorp at any time during the period beginning on and including September 18, 2013, through and including January 17, 2014, including any and all of their respective successors-in-interest, predecessors, legal representatives, trustees, executors, administrators, heirs, assignees, or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, but excluding Defendants, the officers and directors of MetroCorp, and, at all relevant times, the members of their immediate families, their legal representatives, heirs, successors, and assigns, and any entity in which Defendants have or had a majority interest (the "Settlement Class")

[4] Lead counsel are Faruqi & Faruqi, LLP (the "Faruqi Firm") and Brodsky & Smith, LLC ("Brodsky & Smith"), and Liaison Counsel is The Bilek Law Firm, L.L.P. ("Bilek Law") (collectively referred to herein as "Plaintiffs' Counsel").

set forth below, Plaintiffs respectfully request that the Court approve the Settlement and attorneys' fees and expenses request in their entirety.

## I. INTRODUCTION

As set forth herein and in the accompanying Bilek Declaration, the Settlement is fair, reasonable, and adequate, and the requested amount of attorneys' fees and expenses is reasonable compensation for the benefits achieved and the work performed on behalf of MetroCorp stockholders. The Settlement is the product of a concerted effort by Plaintiffs and their counsel over a compressed period of time to ensure that the members of MetroCorp's Board of Directors (the "Board" or the "Individual Defendants") properly discharged their fiduciary duties to the Company's stockholders in connection with the merger that would provide MetroCorp stockholders with the lesser of $14.60 per share and 1.72 times the per share tangible equity, as adjusted, for each MetroCorp share of stock they currently own (the "Merger"), and embodied in the definitive Agreement and Plan of Merger (the "Merger Agreement") dated September 18, 2013, between East West Bancorp, Inc. ("East West"), parent company of East West Bank, and MetroCorp Bancshares, Inc. ("MetroCorp"), parent of MetroBank, N.A. and Metro United Bank.

As demonstrated herein, the Settlement is the product of vigorous adversarial litigation, provides valuable benefits to the Settlement Class, was consummated following arm's-length negotiations between highly experienced counsel and represents an excellent resolution of this complex case. The reaction of the Settlement Class strongly supports that conclusion. Pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Order") entered by the Court on July 22, 2014, MetroCorp was directed to mail the Notice of Pendency of Class Action, Proposed Settlement of Class Action, and Settlement Hearing ("Notice") to the

Settlement Class. Objections to the Settlement are not due until October 16, 2014 (14 days prior to the Settlement Hearing), but, as of the date of this memorandum, Plaintiffs' Counsel are not aware of any objections.

Plaintiffs' prosecution of the Consolidated Action provided MetroCorp stockholders with substantial benefits through material disclosures regarding, *inter alia*: (i) critical assumptions made by Metrocorp's financial advisor Sandler O'Neill & Partners, L.P. ("Sandler O'Neill") in its financial analyses conducted in connection with the preparation and issuance of its fairness opinion; and (ii) the process and negotiations between MetroCorp and East West leading up to the signing of the Merger Agreement (the "Supplemental Disclosures"). Additionally, Defendants agreed to lower the termination fee provision of the Merger Agreement by $10 million, thereby lowering the termination fee percentage from 3% to 2.5%.

The Actions challenged the acquisition of MetroCorp by East West through an allegedly inadequate and faulty sales process that took only nine (9) days to complete over a holiday weekend. Plaintiffs filed a detailed Consolidated Class Action Complaint (the "Consolidated Complaint") alleging, among other things, that in connection with the approval of the Merger Agreement and the Merger, the Board failed to obtain a fair price for the Company and that the Form S-4 Registration Statement filed by the Company with the Securities and Exchange Commission ("SEC") on October 28, 2013 (the "Preliminary Proxy"), failed to disclose certain material information to MetroCorp stockholders.

In response to Plaintiffs' allegations, and as a result of extensive arm's-length negotiations, Defendants agreed to provide additional material information to MetroCorp's stockholders. The Supplemental Disclosures supplied by MetroCorp to its stockholders consisted of disclosures that Plaintiffs had complained were previously omitted from the

Preliminary Proxy. The Supplemental Disclosures afforded the Company's stockholders the opportunity to make an informed decision as to whether or not to vote in favor of the Merger. In addition, Defendants agreed to lower the termination fee provision of the Merger Agreement by $10 million.

Plaintiffs' Counsel investigated the facts surrounding the Merger under significant time pressures and vigorously pursued Plaintiffs' claims against Defendants through an extensive and expedited process, which included: (i) filing the Consolidated Complaint; (ii) vigorously negotiating with Defendants the timing and scope of discovery; (iii) reviewing and analyzing public and non-public documents relevant to the Merger produced by MetroCorp; (iv) deposing Defendants George M. Lee ("Lee"), Co-Chairman and Chief Executive Officer of MetroCorp, on December 6, 2013, Mary Chu, an independent member of the Board on February 19, 2014, and Christopher Murray of Sandler O'Neill, on December 9, 2013; (v) consulting with a financial expert; (vi) drafting and serving a settlement demand letter on counsel for Defendants; and (vii) negotiating the Settlement.

Based on evidence collected and analyzed and consultations with their financial expert, Plaintiffs were confident in pursuing this matter to trial and beyond, but well aware that Defendants' reliance on the business judgment rule presented significant hurdles for Plaintiffs' case that may have prevented securing any recovery whatsoever from Defendants. Thus, when the time and expense necessary to proceed through trial and appeals was weighed against the likelihood of obtaining a better result on any judgment obtained after trial, Plaintiffs and their counsel were able to arrive at a very valuable settlement after extensive arm's-length negotiations conducted by knowledgeable and experienced counsel.

Based on these circumstances, the Settling Parties consider the proposed Settlement to be fair, reasonable, and adequate. Plaintiffs respectfully request that the Court approve the Settlement as fair, reasonable, and adequate. In recognition of Plaintiffs' Counsel's efforts in effectively prosecuting and resolving the Consolidated Action, Plaintiffs also seek the Court's approval of the payment by Defendants' of reasonable attorneys' fees and expenses in the total amount not to exceed $425,000. Defendants do not oppose Plaintiffs' fee request. This fee request is consistent both with the legal principles governing fee and expense awards, and the awards in similar litigations that achieved similarly beneficial results for stockholders.

## II. BACKGROUND OF THE LITIGATION

On September 18, 2013, the Company entered into a merger agreement (the "Merger Agreement") with East West pursuant to which, among other things, East West would acquire MetroCorp (the "Proposed Transaction"), subject to a vote in favor of the Merger Agreement by the holders of a majority of shares of MetroCorp entitled to vote to approve the Merger Agreement. *See* Bilek Decl. at ¶ 5.

On October 28, 2013, MetroCorp and East West filed a preliminary proxy statement/prospectus in a Form S-4 (the "Preliminary Proxy") relating to the then Proposed Transaction with the SEC. *Id.* at ¶ 6.

On October 31, 2013, Hsin-Hui Kuo filed a putative class action (the "Kuo Action") alleging claims against Defendants for breaches of fiduciary duties, aiding and abetting, and violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with the Proposed Transaction. *Id.* at ¶ 7.

On November 8, 2013, MetroCorp and East West filed Amendment No. 1 to the S-4 related to the Proposed Transaction with the SEC announcing, in relevant part, that the

MetroCorp shareholder vote to approve the Proposed Transaction would be held on December 16, 2013. *Id.* at ¶ 8.

On November 11, 2013, Michael Paganini also filed a putative class action (the "Paganini Action") alleging claims against Defendants for breaches for fiduciary duties, aiding and abetting, and violations of Sections 14(a) and 20(a) of the Exchange Act in connection with the Proposed Transaction. *Id.* at ¶ 9.

On November 19, 2013, the Court granted an order consolidating the Kuo Action with the Paganini Action for all purposes, under the caption "In re MetroCorp Bancshares, Inc. Shareholders Litigation," and appointing the Faruqi Firm and Brodsky & Smith as Interim Co-Lead Counsel and Bilek Law as Liaison Counsel. *Id.* at ¶ 10.

On November 25, 2013, MetroCorp agreed to provide Plaintiffs with discovery documents relating to Plaintiffs' claims, including minutes of meetings of the Board, copies of engagement letters between MetroCorp and its financial advisor Sandler O'Neill, presentations to the Board by Sandler O'Neill, and relevant e-mails between members of the Board and East West.

Also, on November 25, 2013, MetroCorp agreed (i) to the deposition of Mr. George M. Lee ("Mr. Lee"), Co-Chairman and Chief Executive Officer of MetroCorp, and (ii) to arrange for the deposition of a representative of Sandler O'Neill. *Id.* at ¶ 11.

Also, on November 25, 2013, MetroCorp produced Sandler O'Neill's fairness presentation to the Board regarding the Proposed Transaction. *Id.* at ¶ 12.

On November 26, 2013, Plaintiffs filed the Consolidated Class Action Complaint alleging that Defendants breached their fiduciary duties or aided and abetted such breaches, and

violated Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9, in connection with the Proposed Transaction. *Id.* at ¶ 13.

On December 2, 2013, MetroCorp produced minutes of the meetings of the Board relating to the then Proposed Transaction. On December 3, 2013, MetroCorp produced Mr. Lee's non-privileged e-mails relating to the Proposed Transaction. Between December 2, 2013, and December 5, 2013, Plaintiffs' Counsel reviewed and analyzed the documents produced by Defendants. *Id.* at ¶ 14.

On December 6, 2013, Plaintiffs' Counsel deposed Mr. Lee in Houston, Texas. On December 9, 2013, Plaintiffs' Counsel deposed a representative of Sandler O'Neill knowledgeable on the Proposed Transaction in New York, New York. *Id.* at ¶ 15.

Based upon a review of the materials produced by Defendants and the depositions taken by Plaintiffs, Plaintiffs recognized that there were serious obstacles to succeeding on their claims, and concluded that the most beneficial consideration to be provided to MetroCorp shareholders in connection with the Consolidated Action was the disclosure of additional information in connection with the shareholder vote with respect to the Proposed Transaction and potential amendments to the Merger Agreement. *Id.* at ¶ 16.

The parties thereafter engaged in arm's-length discussions and negotiations regarding a potential resolution of the claims asserted in the Consolidated Action. *Id.* at ¶ 17. In connection with such discussions and negotiations, Plaintiffs proposed to Defendants various supplemental disclosures and potential amendments to the Merger Agreement that Plaintiffs believed should have been made originally in connection with the Proposed Transaction. *Id.* Following arm's-length negotiations, Defendants agreed, in order to settle the Consolidated Action, to provide the

Supplemental Disclosures attached as Exhibit A to the Stipulation and to and adjustment to the Merger Agreement - lowering the termination fee by $10 million. *Id.*

On December 10, 2013, Plaintiffs' Counsel, the Company's Counsel, the Individual Defendants' Counsel, and East West's Counsel reached an agreement in principle, the substantive terms of which were memorialized in a Memorandum of Understanding (the "MOU"), providing for settlement of the Consolidated Action, subject to confirmatory discovery that has now been completed. *Id.* at ¶ 18.

Also, on December 10, 2013, in accordance with the MOU, Defendants filed with the SEC the Supplemental Disclosures on Form 8-K and agreed to lower the termination fee in the Merger Agreement from 3.0% to 2.5% of the final merger consideration. *Id.* at ¶ 19. Without in any way admitting or conceding that the Supplemental Disclosures or the amendment to the Merger Agreement are or may have been material or required, Defendants acknowledge that the filing of the Actions and negotiations with Plaintiffs in connection with a potential settlement of the Consolidated Action were the sole cause of the Supplemental Disclosures and the amendment to the Merger Agreement. *Id.*

A special meeting of the shareholders of MetroCorp to vote on the Proposed Transaction and approve the Merger Agreement occurred on December 16, 2013, and the related resolution was passed by a requisite number of the Company's shareholders. *Id.* at ¶ 20.

In accordance with the confirmatory discovery provisions in the MOU, Plaintiffs' Counsel then deposed on February 19, 2014, May P. Chu ("Ms. Chu") a director of the Board, Chairman of the Board's audit committee, and a member of the compensation committee. *Id.* at ¶ 21.

Throughout the litigation, Plaintiffs' Counsel conducted a thorough investigation into the facts and law relating to the Action. *Id.* at ¶ 22. For instance, Lead Plaintiffs retained and consulted with a financial expert, reviewed with the expert the Preliminary Proxy and the Supplemental Disclosures, discovery materials, and relevant public information. *Id.* After fully analyzing the merits of all parties' contentions, including the impact of the proposed Settlement on Lead Plaintiffs and absent Settlement Class members, Lead Plaintiffs and Plaintiffs' Counsel entered into the Stipulation providing for the Settlement described below. *Id.* Importantly, during the negotiations, all parties had a clear view of the strengths and weaknesses of their respective claims and defenses, and the Settlement is the product of arm's-length negotiations between the parties, who were all represented by counsel with extensive experience and expertise in shareholder litigation. *Id.*

In addition, after agreeing to all of the substantive terms of the Settlement, the Parties began discussing Plaintiffs' Counsel's request for fees and expenses. *Id.* at ¶ 23. As a result of several arm's-length negotiation sessions, Defendants agreed to pay Plaintiffs' Counsel up to $425,000 in the aggregate for all of their fees and expenses, subject to Court approval. *Id.* Moreover, the award of attorneys' fees and expenses will in no way reduce the benefits received by the Settlement Class (whose members will not contribute to its payment) given that MetroCorp, its successor in interest, and/or its insurers have agreed to bear the full cost of an award of attorneys' fees and expenses up to $425,000. *Id.*

The Settling Parties filed the executed Stipulation with the Court on July 18, 2014. Attached as exhibits to the Stipulation were a copy of a proposed Preliminary Order, a proposed form of Notice, and a proposed Final Judgment. *Id.* at ¶ 24.

The Court entered the Preliminary Order on July 22, 2014, which, *inter alia*, preliminarily certified the Settlement Class, preliminarily approved the Stipulation, set the date for the hearing concerning the Settlement Hearing on October 30, 2014, at 1:30 p.m., approved the form and method of the Notice, and directed Defendants to mail the Notice to the Settlement Class. *Id.* at ¶ 25.

Not a single objection to the Settlement or Plaintiffs' Counsel's award of up to $425,500 in the aggregate for all of their fees and expenses or request for exclusion from the Settlement Class has been received from any Settlement Class member (the final date for objections is October 16, 2014), and no Settlement Class member has requested to appear at the Settlement Hearing scheduled for October 30, 2014. *Id.* at ¶ 26.

The Notice advised Class members of, among other things:

- The definition of the Settlement Class and that the right of the members of the Settlement Class to be excluded from the Settlement, object to the Settlement and/or Plaintiffs' Counsels application for attorneys' fees and expenses;

- The background and history of the Actions and Settlement negotiations;

- The nature of the claims asserted;

- The terms of the Settlement as consideration for the release of claims contemplated thereby and the amount of Plaintiffs' Counsel's award of attorneys' fees and expenses; and

- The time and place of the Settlement Hearing and the procedures that Settlement Class members must follow if they wish to appear or object, or otherwise be heard at the hearing.

## III. THE SETTLEMENT TERMS

The Settlement required MetroCorp to disclose certain information to members of the Settlement Class that Lead Plaintiffs believed was material and critical to their ability to make a fully-informed decision regarding whether to vote for, or against, the Merger and to agree to

lower the termination fee in the Merger Agreement from 3.0% to 2.5% of the final merger consideration. *Id.* at ¶ 27. The Supplemental Disclosures,[5] which were set forth in a Form 8-K filed with the SEC on December 10, 2013, provided information to MetroCorp stockholders in advance of the stockholders' vote concerning, in part, the following:

- With respect to the MetroCorp: *Comparable Company Analysis*, in addition to the "Peer Group Median," providing specific company-by-company figures for each of the comparable companies.

- With respect to the East West: *Comparable Company Analysis*, in addition to the "Peer Group Median," providing specific company-by-company figures for each of the comparable companies.

- With respect to the *Analysis of Selected Merger Transactions*, replacing the description of "Southwest Median Result" and the "Nationwide Median Result" with transaction-by-transaction figures for each of the comparable transactions in both categories.

- With respect to the *Analysis of Selected Merger Transactions*, correcting the Imputed Valuation table so that it correctly indicates a valuation for MetroCorp and not East West.

- With respect to the MetroCorp: *Net Present Value Analysis*, the inclusion of a table setting for the following specific data derived from Sandler O'Neill's net present value analysis for 2013-2017: Net Income, Earnings per Share, Dividends per Share and Tangible Book Value per Share.

- With respect to the East West: *Net Present Value Analysis*, the inclusion of a table setting forth the following specific data derived from Sandler O'Neill's net present value analysis for 2013-2017: Net Income, Earnings per Share, Dividends per Share and Tangible Book Value per Share.

- With respect to Sandler O'Neill's Compensation and Other Relationships with MetroCorp Bancshares, Inc., the inclusion of additional language indicating that Sandler O'Neill was not entitled to receive any additional compensation contingent upon the consummation of the Proposed Transaction.

- With respect to the Background of the Merger, the inclusion of the following information (i) in early 2013, MetroCorp retained a consultant

[5] *See* Exhibit A to the Stipulation.

> in China to identify any Chinese financial institution that was interested in entering the U.S. market through a business combination with MetroCorp; (ii) the specific topics addressed by East West chief executive officer Mr. Dominic Ng and Mr. Lee during an August 14, 2013 dinner, including share price issues as a multiple of tangible book value and premium to market pricing indicated in recent Texas bank and Asian ethnic bank transactions; (iii) the reasons why MetroCorp retained Sandler O'Neill to render a fairness opinion as opposed to the investment bank the Company had previously retained in 2011 and the fact that absent board members gave their support for the Sandler O'Neill retention; and (iv) the fact that the Mr. Lee was advised that East West, as opposed to MetroCorp, would assume payment of approximately $2.5 million in employee stock options, as well as Mr. Lee's severance package with MetroCorp, worth approximately $1.785 million on the same day that East West recalculated its purchase price from $281 million to $273 million, thus lowering the purchase price from an estimated $15.00 per share as set forth in East West's letter of intent to $14.60.

*Id.* at ¶ 31.

The Stipulation provides that, if the Court approves the Settlement, and in consideration of the Supplemental Disclosures and the reduction of the termination fee from 3% to 2.5%, Lead Plaintiffs, on behalf of the Settlement Class, agree to release all claims asserted against Defendants in the Consolidated Action or in any action, proceeding, or shareholder demand involving the facts and circumstances that gave rise to the Actions. *Id.* at ¶ 32.

## IV. THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED

### A. The Fifth Circuit Favors Settlement of Class Actions and Presumes Fairness of Settlements Negotiated and Supported by Experienced and Competent Counsel

Under the Federal Rule of Civil Procedure 23(e), the Court must approve any settlement that would result in dismissal of a class action. The standard for reviewing a proposed settlement of a class action is whether the proposed settlement is "fair, adequate and reasonable," and has been entered into without collusion between the parties. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981); *Ayer v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004). The Fifth Circuit has consistently

held that settlements are "'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (citation omitted); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981) (noting "strong judicial policy favoring settlement of disputes"). In addition, "there is an overriding public interest in favor of settlement of [class actions]," because such suits "have a well-deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331; *see also* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002).

When evaluating the fairness of a proposed class settlement, the trial judge "must not try the case in the settlement hearings because 'the very purpose of the compromise is to avoid the delay and expense of such a trial.'" *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (quoting *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971)). "[T]here is a strong presumption in favor of finding the Settlement Agreement fair. The proposed settlement is not required to 'achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation.' Rather, compromise is the essence of settlement . . ." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007) (quoting *Garza v. Sporting Goods Props.*, No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009, at *41 (W.D. Tex. Feb. 6, 1996)) (citations omitted). Thus, a court "generally will consider the facts of a settlement in a light favorable to promoting settlements." *McNary v. Am. Sav. & Loan Ass'n*, 76 F.R.D. 644, 648 (N.D. Tex. 1977).

Where experienced counsel have negotiated a settlement at arm's length, courts accord class counsel's opinion great weight, and presume the compromise is fair and reasonable. *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1008 (5th Cir. 1982); *Murillo v. Tex. A&M Univ.*

*Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996) (citing Newberg, *supra* § 11.42). Thus, the court "is entitled to rely upon the judgment of experienced counsel," and "[i]ndeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330 (citation omitted); *see also DeHoyos*, 240 F.R.D. at 286 (holding that "the Court may rely on the judgment of experienced counsel for the parties" when evaluating a settlement) (citing *Garza*, 1996 U.S. Dist. LEXIS 2009, at *41).

Here, the Settlement was reached by experienced, fully-informed counsel after significant investigation by Plaintiffs' Counsel and vigorous arm's-length negotiations with defense counsel. Thus, the Court should accord significant weight to Plaintiffs' Counsel's support of the Settlement and presume that the Settlement is fair and reasonable. In addition, as set forth below, the six factors considered by the Fifth Circuit in evaluating settlements demonstrate that the Settlement is a good result for the proposed Settlement Class and supports the Court's approval of Settlement. *See Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982) (describing factors).

**B. The Settlement Is Fair, Reasonable, and Adequate**

Once satisfied that counsel adequately represented the class and has bargained for the proposed settlement in good faith, the "only question" for the Court "is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." *McNary*, 76 F.R.D. at 649 (citations omitted). The Fifth Circuit considers the following six factors in determining whether to approve a proposed settlement:

1. The existence of fraud or collusion behind the settlement;
2. The complexity, expense, and likely duration of the litigation;
3. The stage of the proceedings and the amount of discovery completed;
4. The probability of plaintiffs' success on the merits;

5. The range of possible recovery; and

6. The opinions of class counsel, class representatives, and absent class members.

*Reed*, 703 F.2d at 172 (citing *Parker*, 667 F.2d at 1209); *see also Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 789 (5th Cir. 1986). The Settlement satisfies these criteria.

### 1. There Was and Is No Fraud or Collusion in Connection with the Settlement

Courts in this jurisdiction presume that settlement negotiations are free from fraud and collusion, unless affirmative evidence indicates otherwise. *DeHoyos*, 240 F.R.D. at 287; *Purdie v. Ace Cash Express, Inc.*, No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547, at *19 (N.D. Tex. Dec. 11, 2003) (rejecting claim of fraud or collusion because objector pointed to no evidence in record supporting her claim).

The Settlement was reached only after extensive and hard-fought negotiations. Plaintiffs' Counsel is filing herewith the Bilek Declaration attesting that the Settlement was the product of arms-length negotiation and that there was and is no collusion of any kind in connection with the Settlement. Indeed, the Settlement was negotiated at arms-length by experienced counsel who collectively have decades of experience in litigating large, complex class actions. The Faruqi Firm, Brodsky & Smith, and Bilek Law have many years of experience in litigating class actions and have negotiated numerous class settlements that have been approved by courts throughout the country, as shown by their firm biographies that are attached to the Bilek Declaration as Exhibits 6 and 7. Likewise, Defendants were represented by Bracewell & Giuliani, LLP and Mannatt, Phelps & Phillips, LLP, firms with a reputation for tenacious defense of class actions and other complex civil matters. The negotiations here were hard fought and there was much give and take on both sides. Based on that, and because there is no evidence—or even hint—that the Settlement is the product of collusion between the parties, there can be no question the Class

was fairly and adequately represented in the course of these proceedings. Accordingly, the first *Reed* factor supports approval of the Settlement.

**2. The Complexity, Expense, and Likely Duration of this Litigation Supports the Settlement**

"Most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763, at *43 (N.D. Ohio Sept. 11, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). As a result, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (citation and internal quotations omitted). Accordingly, courts have consistently held that "[t]he expense and possible duration of the litigation [should] be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *Isby v. Bayh*, 75 F.3d 1191, 1198-99 (7th Cir. 1996) (holding that in determining the "fairness" of class action settlements, district courts will employ a number of factors including an assessment of the likely complexity, length, and expense of the litigation.); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 340 (W.D. Pa. 1997) ("[I]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.").

These considerations are fully applicable here. Although the Consolidated Complaint challenged the offer price for the Company's shares, valuation issues frequently become a battle of experts and courts are often skeptical regarding competing expert testimony. *See, e.g., Gilbert v. MPM Enters., Inc.*, 709 A.2d 663, 673 (Del. Ch. 1997); *In re Appraisal of Shell Oil Co.*, No. 8080, 1990 Del. Ch. LEXIS 199 (Del. Ch. Dec. 11, 1990), *aff'd*, 607 A.2d 1213 (Del. 1992); *Kahn v. Sullivan*, 594 A.2d 48, 62 (Del. 1991). The Consolidated Action presents these (and

other) complex issues, which after trial, would likely be followed by an appeal. Consequently, significant legal and financial resources would be expended in that effort. The Settlement obviates the need to litigate any of these issues and the concomitant expense. Thus, this factor supports approval of the Settlement.

Like other factors, this one seeks to measure whether a settlement is reasonable in light of known or perceived risks. *See, e.g.*, *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (noting that although a court is not required to "decide the merits of the case or resolve unsettled legal questions," it cannot "judge the fairness of a proposed compromise" without "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement") (citation and internal quotations omitted); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 779 (N.D. Ohio 2010) ("A class action settlement may be particularly beneficial to the class if the risk of losing the case on the merits is high.").

Where there are material deficiencies in disclosure documents seeking shareholder approval, courts have held that the preferred remedy is disclosure before the merger. *See, e.g.*, *Gilmartin v. Adobe Res. Corp.*, No. 12467, 1992 Del. Ch. LEXIS 80, at *43 (Del. Ch. April 6, 1992) (granting plaintiff's motion for a preliminary injunction and holding "the right to cast an informed vote is specific, and its proper vindication in this case requires a specific remedy such as an injunction, rather than a substitutionary remedy such as damages");

> [O]ur cases recognize that it is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected. An injunctive remedy of that nature specifically vindicates the stockholder right at issue—the right to receive a fair disclosure of the material facts necessary to cast a fully informed vote—in a manner that later monetary damages cannot and is therefore the preferred remedy, where practicable.

*In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001).

In this case, Plaintiffs ensured that MetroCorp stockholders received the Supplemental Disclosures in advance of the vote on the Merger, thereby providing MetroCorp stockholders with the material information and permitted them to make an informed decision before casting their votes on the Merger. In addition, the negotiated reduction in the termination fee likewise occurred in such a time frame to allow a potential third party to take such a reduction into consideration in terms of making a bid.

However, had Defendants not caused the Company to issue the Supplemental Disclosures, palpable risk existed that the Court would have enjoined the consummation of the ultimate Merger. *See In re Staples*, 792 A.2d at 956-58 (granting an injunction for disclosures which misleadingly described (i) the method by which the valuation range for comparable companies were set forth, (ii) the precedent transaction analysis, and (iii) the discounted cash flow valuation). Enjoining a transaction always presents the possibility that the buyer could walk away, denying shareholders the opportunity to decide for themselves whether or not to vote in favor of a transaction. Securing this "highly material" information for the shareholders of MetroCorp conferred upon them a substantial benefit and did so without the "deal risk" that enjoining the Merger might have presented.

Nevertheless, if the litigation had continued, Plaintiffs would have faced a host of substantive arguments. Defendants have defended, and intended to continue to defend this litigation vigorously. If the litigation continued, the parties would have most likely had to draft and research comprehensive briefs related to motions to dismiss and motions for summary judgment. If Plaintiffs survived these motions, the parties would then have engaged in expert discovery, including additional document production and depositions, followed by trial. Continued litigation would assume a very substantial likelihood that Plaintiffs and the Class

might recover nothing. Moreover, even if a jury returned a favorable verdict, after trial there would be the likelihood of a complex and prolonged appeal process. As a result, the Settlement secured MetroCorp's stockholders with material information prior to a stockholder vote on the Merger, which permitted stockholders to cast a fully-informed vote on the Merger.

#### 3. The Stage of Proceedings and the Amount of Discovery Completed Weighs in Favor of Settlement

Early in the Consolidated Action, Plaintiffs' Counsel obtained and thoroughly reviewed substantial documentation, including (i) MetroCorp Board minutes; (ii) an August 19, 2013 draft engagement letter from Sandler O'Neill to the Board of MetroCorp and to the attention of, and to be accepted and agreed by, Mr. Lee; (iii) presentations to the MetroCorp Board by Sandler O'Neill; and (iv) Mr. Lee's non-privileged e-mails relating to the Proposed Transaction. Plaintiffs' Counsel also conferred with a finance and valuation expert concerning the issues in the Consolidated Action, particularly damages and other available relief. Furthermore, Plaintiffs' Counsel conducted the depositions of Defendant Lee, Chairman and CEO of the Company, and Christopher Murray, of Sandler O'Neill, both of whom were central players in the Merger, to confirm that the Settlement was fair and reasonable. Additionally, in accordance with the confirmatory discovery provisions in the MOU, Plaintiffs' Counsel then deposed on February 19, 2014 May P. Chu ("Ms. Chu") a director of the Board, Chairman of the Board's audit committee, and member of the compensation committee.

Further ensuring that settlement negotiations were extensive and adversarial, Plaintiffs' Counsel and Defendants' counsel exchanged proposals and counter-proposals concerning the nature and scope of the Supplemental Disclosures. Ultimately, Defendants agreed to provide MetroCorp stockholders with more specific information including, *inter alia*: (i) critical assumptions made by Sandler O'Neill in its financial analyses conducted in connection with the

preparation and issuance of its fairness opinion, and (ii) the process and negotiations between MetroCorp and East West, leading up to the signing of the Merger Agreement. These Supplemental Disclosures addressed many of the issues raised by Lead Plaintiffs in the Consolidated Complaint.

Plaintiffs' Counsel thus determined that the Settlement was fair, reasonable, and adequate only after reviewing public and private documents, as well as considering the testimony of the confirmatory depositions. Therefore, the parties reached an agreement to settle with a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (N.D. Tex. 1996). This factor therefore supports approval of the Settlement.

**4. The Probability of Success on the Merits and the Possible Range of Recovery Supports the Settlement**

In analyzing the factors of probability of success on the merits, possible range of recovery, and certainty of damages, the court is guided by two principles: "'The Settlement terms should be compared with the likely rewards the class would have received following a successful trial' and 'the strength of the case for plaintiffs must be balanced against the amount offered in settlement.'" *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 433 (S.D. Tex. 1999) (citation omitted). "However, the court is not to decide the issues or try the case via the fairness hearing because, 'the very purpose of the compromise is to avoid the delay and expense of such a trial.'" *Garza*, 1996 U.S. Dist. LEXIS 2009, at *49 (citing *Reed*, 703 F.2d at 172).

**a. The Damages Claim**

While Plaintiffs believe their claims were meritorious when filed, through investigation, discovery, and consultation with their valuation expert, Plaintiffs and Plaintiffs' Counsel have concluded that, except for the disclosure claims, their chances of success on the other claims

relating to monetary damages would have been an uphill battle under the particular circumstances and controlling case law.

Apart from the disclosure claims described above that were addressed by the Supplemental Disclosures, Plaintiffs' claims were predicated on alleged breaches of fiduciary duty by the Individual Defendants (and MetroCorp and East West aiding and abetting thereof) on the grounds that they failed to obtain a fair and adequate price for MetroCorp stockholders on behalf of the Company's stockholders. Plaintiffs would have argued that: (i) the entire due diligence examination of both MetroCorp and East West took only nine (9) days to complete over a holiday weekend; (ii) The Board only "informally" asked the Company's financial advisor, Sandler O'Neill, to perform a cursory market check by reaching out to "a few" strategic partners; (iii) the members of the Board did not conduct an adequate process because they failed to solicit interest from other potential purchasers; (iv) the Board permitted defendant Lee to negotiate directly with East West CEO Dominic Ng in light of the social relationship between the two and the fact that Defendant Lee stood to receive over $2.5 million and continued employment with the merged entities; (v) the Board did not negotiate a fair price for the Company's stockholders in light of the fact that MetroCorp's net income was improving quarter-by-quarter and the Company was poised to generate future financial growth with at least one analyst setting a price target of $15 for the Company, well above the highest possible consideration of $14.60; and (vi) MetroCorp and East West aided and abetted the Individual Defendants' breaches of fiduciary duty.

Defendants would have likely countered that the Board used their business judgment to sell the Company because the Merger had various advantageous aspects that were in the best interests of MetroCorp stockholders. Indeed, Lee testified in his deposition that through the

Merger, MetroCorp "probably the most critical point is that the fact that East West is the only Chinese ethnic bank that has four service branches in China and with the need of doing Chinese currency transactions, it would be very beneficial for the customers to be able to do the MB transactions. That was a very key part of that. Just for your knowledge, Cathay or no other banks, including the larger main stream banks, has that capability." Lee Tr. at 47:17-48:1 (*see* Bilek Decl., Ex. 2).

Whether or not the Merger consideration sufficiently valued MetroCorp was likewise a complex matter and there was substantial evidentiary support for Defendants' argument that the Board's decision to accept East West's offer was fully defensible under the business judgment rule. In any event, based on the extensive public and confidential financial information produced, Plaintiffs' valuation expert determined he would have had difficulty demonstrating that the Merger consideration fell outside the range of fairness under Delaware case law. Thus, even if Plaintiffs were able to persuade the Court that there was some deficiency in the process that produced the Merger Agreement, Plaintiffs could not realistically expect to recover a money judgment in favor of the Class. *See In re Wm. Wrigley Jr. Co. S'holders Litig.*, No. 3750-VCL, 2009 Del. Ch. LEXIS 12, at *18-23 (Del. Ch. Jan. 22, 2009) (approving a disclosure settlement as fair and reasonable despite the absence of a monetary benefit when the challenged transaction appeared to be fully and fairly priced). Moreover, no rival bidder emerged at the time of the Settlement, making the prospect of securing an injunction (on grounds other than disclosure) slim. *See, e.g.*, *In re El Paso Corp. S'holders Litig.*, 41 A.3d 432, 449-52 (Del. Ch. 2012).

In recognition of this, Plaintiffs' Counsel secured the Supplemental Disclosures ahead of the stockholder vote, which remedied various misleading statements and omissions in the Preliminary Proxy and identified in the Consolidated Complaint. Plaintiffs' Counsel's efforts—

litigating the claims on behalf of MetroCorp's stockholders, vigorously communicating their views to Defendants' counsel, and negotiating a settlement that provided for extensive and material additional disclosures and a reduction in the termination fee from 3% to 2.5%—thus resulted in a significant measure of protection and benefit to the Class. Based on their investigation, discovery efforts, and their analysis of applicable legal principles, Plaintiffs and Plaintiffs' Counsel concluded that the enhanced disclosures provided ample consideration for the Settlement and release of the claims in this lawsuit, given the substantial risks, costs, and uncertainties of continued litigation.

**b. The Disclosure Claims**

After concluding that they would be unlikely to prevail on their damages claims, Plaintiffs, Plaintiffs' Counsel, and their financial expert turned their attention to deficiencies in the information MetroCorp disseminated to its stockholders. Vigorous and arm's-length negotiations between counsel for the parties produced additional material disclosures ahead of the Merger, which ensured that MetroCorp stockholders were able to make an informed decision on whether to vote for the Merger and which substantially resolved the disclosure contentions Plaintiffs alleged in the Consolidated Complaint and settlement demand letters. Plaintiffs' litigation of this Consolidated Action provided the Class with additional material information concerning, *inter alia*: (i) important details regarding Sandler O'Neill's financial analyses; and (ii) the process and negotiations with East West leading up to the signing of the Merger Agreement, each of which allowed members of the Class to make an informed decision of whether to vote in favor of the Merger. *See supra* Section III.

**i. Material Information Regarding Sandler O'Neill's Financial Analyses**

Plaintiffs obtained through the Supplemental Disclosures material information regarding Sandler O'Neill's financial analyses on MetroCorp and East West. *See supra* Section III. Crucially, these financial analyses supported Sandler O'Neill's fairness opinion.

Sandler O'Neill's fairness opinion was perhaps the most critical factor that stockholders would consider when deciding whether to vote in favor of the Merger. As the Court of Chancery has previously recognized:

> [W]hen a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Only providing some of that information is insufficient to fulfill the duty of providing a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of the [] board as to how to vote . . . rely.

*Netsmart*, 924 A.2d 171, 202 (Del. Ch. March 14, 2007). Thus, it is axiomatic that key inputs and assumptions Sandler O'Neill used in its analyses are material and should be disclosed to MetroCorp stockholders. *See, e.g., In re Pure Res., Inc. S'holders Litig.*, 808 A2d 421, 449 (Del. Ch. 2002) (finding that stockholders are entitled to a "fair summary" of the investment bankers' work).

The above undisclosed inputs and assumptions Sandler O'Neill used in its analyses are important because Sandler O'Neill used them as the basis of its analyses. *See David P. Simonetti Rollover IRA v. Margolis*, 2008 Del. Ch. LEXIS 78 at *30 (Del. Ch. June 27, 2008) ("The key assumptions made by a banker in formulating his opinion are of paramount importance to the stockholders because any valuation analysis is heavily dependent upon the projections utilized. A proxy statement should 'give the stockholders the best estimate of the company's future cash flows as of the time the board approved the [transaction].'") (quoting *Netsmart*, 924 A.2d at

203); Transcript of Settlement Hearing at 43:6-15, *Turberg v. ArcSight*, No. 5821-VCL (Del. Ch. Sept. 20, 2011) ("[I]f you were to consider what really constitutes a fair summary, then the background multiples should be in there . . . [Y]ou would never see a board book that would go to the board without the background multiples.").[6]

Indeed, is well-settled under Delaware law that when a disclosure document "ventures into certain subjects, it must do so in a manner that is materially complete and unbiased by the omission of material facts." *In re Pure Res.*, 808 A.2d at 448; *see also In re Topps Co. S'holders Litig.*, 926 A.2d 58, 76-77 (Del. Ch. 2007) (financial advisor's changes to valuation were not explained and the proxy statement was therefore materially misleading); *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1177-78 (Del. Ch. 2010) ("Because the proxy statement spoke on this subject, there was a duty to do so in a non-misleading fashion. . . . [B]ecause the failure to describe what the banker actually came up with . . . the proxy statement presents a range that suggests that the merger price is far more attractive . . .").

In sum, the Supplemental Disclosures provided material information that was missing from the disclosure of MetroCorp's advisor's fairness analyses. This information was necessary for stockholders to receive a fair summary of the advisors' work and to understand the basis of their various analyses. Without disclosure of this information, the advisors' analyses were materially misleading and incomplete.

**ii. Material Disclosures Concerning the Process and Price Negotiations with East West**

The Supplemental Disclosures, as discussed more fully above in Section III, provided stockholders with additional information regarding MetroCorp's negotiations with East West.

[6] Attached as Ex. 3 to the Bilek Decl.

As a result, MetroCorp stockholders were able to fully understand the negotiation process between the Company and East West regarding valuation and the Board's rationale for focusing on a transaction with East West. The Supplemental Disclosures provided stockholders this additional information to clarify the misleading impression previously left by the Preliminary Proxy, i.e., that the Board (i) did not reasonably negotiate for a higher price; and (ii) permitted Mr. Lee to negotiate his severance package to the prejudice of the per share value to be received by the Company's stockholders.

Delaware courts have held that "once defendants traveled down the road of partial disclosure of the history leading up to [a merger] . . . , they had an obligation to provide the stockholders with an accurate, full, and fair characterization of those historic events." *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1280 (Del. 1994). These material Supplemental Disclosures concerning the process were critical to stockholders' ability to fully understand the process the Board took to get a fair price for MetroCorp and, thus, were necessary to provide MetroCorp's stockholders with a full and fair characterization of the events leading up to the Merger.

### 5. The Opinion of Plaintiffs' Counsel and Settlement Class Members

It is well-settled that the reaction of the Class to the Settlement is perhaps the most significant factor to be weighed in considering its adequacy. *See Quintanilla v. A & R Demolition Inc.*, No. H-04-1965, 2008 U.S. Dist. LEXIS 37449, at *5 (S.D. Tex. May 7, 2008) ("'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement'") (quoting *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 118 (2d. Cir. 2005)).

Pursuant to the Court's Preliminary Approval Order, the Notice was sent following the Court's July 22, 2014 order. After receiving notice of the Settlement, not one Class member has

objected to the Settlement as of the time that Plaintiffs' Counsel filed this Motion. Accordingly, the lack of objection from Settlement Class members—or even hint of displeasure from the Settlement Class—weighs heavily in favor of approving the Settlement.

Additionally, the view of Plaintiffs' Counsel, while not conclusive, is "entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Indus., Inc*., 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ahearn v. Fibreboard Corp*., 162 F.R.D. 505, 528 (N.D. Tex. 1995). Plaintiffs' Counsel believe that the Settlement is fair, reasonable, and adequate. As described in Section VI *infra*, Plaintiffs are represented by counsel experienced in class action litigation who concluded that the Settlement is fair, reasonable, and adequate to the Class. The lack of objections and the opinion of Plaintiffs' Counsel further support final approval of the Settlement.

In sum, Plaintiffs' Counsel have weighed all of the factors discussed above and have determined that the proposed Settlement is fair and reasonable and in the best interests of the Class. Therefore, Plaintiffs respectfully submit that the Settlement should be approved.

## V. THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23(a)

### A. The Numerosity Requirement Is Satisfied

The class is so numerous that joinder of all members is impracticable. As of November 1, 2013, approximately 18.7 million Company shares were outstanding. *See Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding a class of 100 to 150 members satisfies numerosity and any more than 40 members should raise a presumption that joinder is impracticable). In addition, the Settlement Class is too geographically dispersed to be easily joined into one action. *See Stott v. Capital Fin. Servs.*, 277 F.R.D. 316, 324 (N.D. Tex. 2011). Because there are hundreds if not thousands of MetroCorp stockholders dispersed throughout the United States, the proposed Settlement Class satisfies the numerosity requirement.

**B. The Commonality Requirement Is Satisfied**

The commonality requirement under Rule 23 (a)(2) is met where, as here, "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. Cnty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). Here, issues common to the Settlement Class include, *inter alia*, (i) whether the Individual Defendants breached their fiduciary duties of undivided loyalty, independence, candor, or due care with respect to Lead Plaintiffs and the other members of the Settlement Class in connection with the Merger and (ii) whether the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonably possible under the circumstances for the benefit of Plaintiffs and the other Settlement Class members in connection with the Merger. As these claims affect the entirety of the Settlement Class equally, the proposed Settlement Class meets the commonality requirement.

**C. The Typicality Requirement Is Satisfied**

The typicality requirement is satisfied because Lead Plaintiffs' claims arise from a similar course of conduct and assert the same legal theories as the claims of all Settlement Class members. *See Lohocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 500 (S.D. Tex. 2004) (typicality is found where claims raised by plaintiffs have "a common source and rest upon the same legal and remedial theories" and "factual differences will not defeat typicality"). Here, the typicality requirement is satisfied by Lead Plaintiffs because their claims arise from the same nucleus of operative facts (*i.e.*, the Merger between MetroCorp and East West). Thus, Lead Plaintiffs' claims are typical of the Settlement Class.

**D. The Adequacy Requirement Is Satisfied**

Lead Plaintiffs have adequately represented the interests of the proposed Settlement Class and have retained counsel qualified to pursue the litigation. *See Unger v. Amedisys, Inc.*, 401

F.3d 316, 320 (5th Cir. 2005) ("[C]lass representative, their counsel, and the relationship between the two are adequate to protect the interests of absent class members."). The adequacy requirement is met where, as here, "(1) the named plaintiffs' counsel [prosecuted] the action zealously and competently; (2) the named plaintiffs possess a sufficient level of knowledge about the litigation to be capable of taking an active role in and exerting control over the prosecution of the litigation; and (3) there are no conflicts of interest between the named plaintiffs and the absent class members." *Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153, 163-64 (N.D. Tex. 2010).

Lead Plaintiffs and Plaintiffs' Counsel have fairly and adequately represented and protected the interests of all Settlement Class members, as demonstrated by the record showing vigorous prosecution of this litigation. Plaintiffs' Counsel is well-qualified to litigate on behalf of the proposed Settlement Class as they have litigated numerous shareholder class actions throughout the country, including in this jurisdiction.[7] There are no conflicts of interest between Lead Plaintiffs, Plaintiffs' Counsel, and the Settlement Class members because their interests are aligned. Thus, Lead Plaintiffs and Plaintiffs' Counsel satisfy the adequacy requirement.

**E. The Proposed Settlement Satisfies Rule 23 (b)**

In addition to meeting all of the requirements of Rule 23 (a), the proposed Settlement Class also satisfies both Rule 23(b)(1) and (b)(2). Rule 23(b)(1) authorizes class certification if:

> (1) prosecuting separate actions by or against individual members would create the risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

[7] *See* Bilek Decl., Exs. 4-6.

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). Rule 23(b)(2) authorizes class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *Rodriguez v. Countrywide Home Loans, Inc.*, 695 F.3d 360, 365 (5th Cir. 2012). A class certified under Rule 23(b)(1) or (b)(2) is mandatory and members of the settlement class ***may not*** opt out. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011).

Because all Settlement Class members are stockholders of the Company challenging the same Merger between MetroCorp and East West, there is a substantial risk of varying or inconsistent results. For example, while one court may have permitted Defendants to proceed with consummating the Merger, another court may have issued an injunction enjoining the stockholder vote. Thus, the possibility of conflicting court orders in this litigation shows that the Settlement Class satisfies Rule 23 (b)(1). *See, e.g., In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG (SSx), 2013 U.S. Dist. LEXIS 155091, at *18 (C.D. Cal. Oct. 25, 2013) ("It would be inefficient to have individual members of the Class—who are likely geographically dispersed, given that CIL was a publicly-traded company—bring separate claims in scattered courts across the country. Such fragmentation would . . . create a risk of inconsistent judgments."); *see also In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 U.S. Dist. LEXIS 136962, at *29-30 (S.D. Ohio Aug. 18, 2009) ("Here absent class certification, the various Shareholder Actions filed against Defendants could result in inconsistent judgments, e.g., regarding whether the transaction should or should not proceed.").

Defendants are also alleged to have acted on grounds that are generally applicable to the proposed Settlement Class members in that the Merger affects all MetroCorp stockholders similarly. In other words, the relief obtained—dissemination of the Supplemental Disclosures—benefitted all members of the Settlement Class equally. By providing this material information to stockholders prior to the stockholder vote, all MetroCorp stockholders were able to make an informed decision whether to vote for, or against, the Merger.

Accordingly, a mandatory *non opt-out* class should be certified under Rules 23(b)(1) and/or (b)(2).

## VI. THE COURT SHOULD GRANT PLAINTIFFS' REQUEST FOR REASONABLE ATTORNEYS' FEES AND EXPENSES

Plaintiffs' Counsel are entitled to a reasonable fee and payments of expenses, which Defendants have agreed to pay up to $425,000. Bilek Decl. at ¶ 34. The Supreme Court has encouraged this type of consensual resolution of attorneys' fee as the ideal toward which litigants should strive. For instance, in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court noted that a "request for attorney's fees should not result in a second major litigation. ***Ideally, of course, litigants will settle the amount of a fee***." *Id*. at 437 (emphasis added); *see also Ayer v. Thompson*, 358 F.3d 356 (5th Cir. 2004) (same).

It is well settled that the determination of reasonable attorneys' fees is left to the sound discretion of the district court. *See Ranger Ins. Co. v. Algie*, 482 F.2d 861, 864 (5th Cir. 1973) (citing *Weeks v. S. Bell Tel. & Tel. Co.*, 467 F.2d 95, 97 (5th Cir. 1972)); *Jinks v. Mays*, 464 F.2d 1223, 1228 (5th Cir. 1972); *Culpepper v. Reynolds Metals Co.*, 442 F.2d 1078, 1081 (5th Cir. 1971)).

In determining the amount of an award of attorneys' fees, courts consider the following factors: (a) the time and labor required, the novelty and difficulty of the questions involved, and

the skill requisite to perform the legal service properly; (b) the time limitations imposed by the client or by the circumstances; (c) the fee customarily charged in the locality for similar legal services; (d) the results obtained; (e) the experience, reputation, and ability of the lawyer or lawyers performing the services; (f) whether the fee is fixed or contingent; and (g) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. Tex. Disciplinary R. Prof'l Conduct Rule 1.04(b);[8] *see also Sugarland Indus. v. Thomas*, 420 A.2d 142, 152 (Del. 1980); *United Vanguard Fund v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997); *PaineWebber R & D Partners II, L.P. v. Centocor, Inc.*, No. 14405, 2000 Del. Ch. LEXIS 12, at *10 (Del. Ch. Jan. 31, 2000). Courts may also consider counsel fee awards in similar cases in determining the amount to be awarded. *See Dow Jones & Co. v. Shields*, No. 184, 1991, 1992 Del. Ch. LEXIS 24, at *3 (Del. Ch. Jan. 10, 1992).

Plaintiffs' Counsel respectfully submit that their request is fair and reasonable in light of the benefits achieved, awards in other similar cases, and other relevant factors.

### A. Plaintiffs Conferred a Substantial Benefit on MetroCorp Stockholders

The result achieved is an important factor to be considered in assessing the propriety of an attorneys' fee award. *Hensley*, 461 U.S. at 436 (considering the "most critical factor is the degree of success obtained");

> The most significant factor in this case is the quality of representation, as measured by the "quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience, and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel."

[8] Rule 1.04(b) also looks to the personal relationship with the client. See rule 1.04(b)(5)-(6). The length of the professional relationship with the client is inapplicable to the instant analysis because Plaintiffs served in a representative capacity on behalf of the proposed Settlement Class.

*In re Ikon Office Solutions*, 194 F.R.D. 166, 194 (E.D. Penn. 2000) (citation omitted.) Courts have long permitted counsel who creates a benefit for others to recover their expenses, including reasonable attorneys' fees, from those who enjoy the benefit conferred. *See Boeing Co. v. Van Gernert*, 444 U.S. 472, 478 (1980). The substantial benefit doctrine is applicable in a class action context even when there is no ascertainable fund from which attorneys' fees can be paid, but the litigation has indirectly conferred substantial monetary or non-monetary benefit on an ascertainable group and the court has jurisdiction over both the subject matter of the lawsuit and the defendant. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Fountain v. Avondale Indus.*, No. 95-1198, 1996 U.S. Dist. LEXIS 5045 (E.D. La. Apr. 18, 1996) (concluding that "[g]uaranteeing the shareholder's right to accurate information in proxy statements is exactly the sort of corporate therapeutics" that warrants the award of attorneys' fees).

Here, after Plaintiffs initiated the Actions, filed the Consolidated Complaint, propounded discovery, filed the motions for expedited proceedings and for preliminary injunction, undertook extensive expedited discovery, and engaged in good faith settlement negotiations, Defendants issued Supplemental Disclosures which substantially addressed Plaintiffs' disclosure deficiency allegations. Plaintiffs also negotiated a $10 million reduction in the Termination Fee making the Company a more attractive target for potential competing bidders. These collective benefits warrant the $425,000 fee sought here.

The Supplemental Disclosures, which were made prior to the stockholder vote on the Merger, permitted MetroCorp stockholders to exercise their right to informed corporate suffrage by making a fully informed decision on the Merger. *Fountain*, 1996 U.S. Dist. LEXIS 5045, at

*2 (awarding attorneys' fees and recognizing that a shareholders "right to cast an informed vote, in and of itself is a substantial interest worthy of vindication") (internal citation omitted).[9]

As discussed *supra*, the Supplemental Disclosures provided stockholders with previously undisclosed, material information on nearly every aspect of the Merger, including (a) the financial analyses that Sandler O'Neill conducted for MetroCorp; and (b) the process leading to the execution of the Merger Agreement. Accordingly, Plaintiffs' Counsel's services to the Settlement Class were of material value to stockholders and warrant an award of attorneys' fees.

Next, by negotiating a lower Termination Fee, Plaintiffs were able to make it more feasible for a competing bidder to make a superior offer. Plaintiffs negotiated a $10 million reduction in the Termination Fee, from $115 million to $105 million. Unreasonably high deal termination fees can have the effect of coercing shareholders of target corporations into accepting the terms of a questionable offer. This $10 million reduction is "substantial" and clearly benefits MetroCorp shareholders by mitigating one hurdle a potential acquirer would have to overcome in order to proceed with a superior proposal. *See, e.g., Wm. Wrigley Jr.*, No. 3750-VCL, 2009 LEXIS 12, at **21 (approving proposed settlement as fair and reasonable and

---

[9] It is also settled under Delaware law that curative disclosures confer a compensable benefit on the class for which class counsel can seek fees and expenses. *See, e.g., In re FLS Holdings, Inc. S'holders Litig.*, No. 12623, 1993 Del. Ch. LEXIS 57, at *16 (Del. Ch. Apr. 2, 1993) ("Improved disclosures may certainly prove beneficial to class members and may constitute consideration of a type which will support a settlement of claims."). The value of timely, meaningful disclosure cannot be overstated:

> Indeed, the timely disclosure of the information in the supplement was presumably of greater value to the class than any award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders' decision making process. Considering all the circumstances presented, I have no difficulty concluding that the disclosures made here constitute adequate consideration for the settlement of the claims asserted and adequately support the fee requested.

*In re Talley Indus., Inc. S'holders Litig.*, No. 15961, 1998 Del. Ch. LEXIS 53, at *46 (Del. Ch. Apr. 13, 1998); *see also In re Staples*, 792 A.2d at 954.

opining that a 10% reduction in a termination fee was "substantial"). The $10 million reduction in the Termination Fee increases the likelihood of a competing bidder and the opportunity for shareholders to receive greater value. *See In re Compellent Tech., Inc. S'holder Litig.*, Consol. C.A. No. 6084-VCL, at 34 (Del. Ch., Dec. 9, 2011) ("The benefit generated from modifying deal protections is easy to conceive but difficult to quantify. The benefit is an increased opportunity for stockholders to receive greater value. To take a simple example, a settlement that reduces a termination fee by $10 million generates a benefit in that more of the consideration from a topping bidder will go to the stockholders rather than the original acquirer."). The fact that a topping bidder did not emerge does not diminish the significant benefit provided to shareholders. *Id*. at 36. The *Compellent* Court reviewed numerous empirical and other studies to analyze the impact of a termination fee on the likelihood of a competing bidder emerging, *id*. at 39-45, concluding that the $6 million reduction in the termination fee resulted in an 8% likelihood that a higher bidder could emerge. *Id*. at 48.

Here, Plaintiffs obtained a $10 million reduction in the Termination Fee implemented seven weeks prior to the close of the Buyout period. This provided other potential bidders with ample opportunity to make a topping bid that would provide shareholders greater value. An 8% increased likelihood of a topping bid is similarly an appropriate measure here given the size of the fee reduction and the ample timing provided to allow a topping bidder to emerge. The benefit of this 8% likelihood of a topping bid is $800,000. *See id*. at 34-35. This benefit can be used by the Court to calculate an attorneys' fee award for the reduction of the Termination Fee using a percentage-of-the-benefit analysis. *Id.* Plaintiffs here reviewed thousands of pages of relevant documents and took two depositions on an expedited basis to achieve this substantial benefit for shareholders, much like the Plaintiffs in *Compellent*. “Although the matter settled at

a relatively early stage, plaintiffs' counsel engaged in substantial effort on an abbreviated timeframe." *Id.* at 48. A fee award of 25% is equally reasonable in this action. *Id.* Using the calculus set forth by in *Compellent*, the "baseline fee award for this aspect [reduction of termination fee] of the settlement" is $200,000. *Id.* at 48.

**B. Fee Awards in Similar Cases and the Rates Charged in Similar Litigation**

Here, the requested fee and expense award is eminently fair and reasonable based on similar shareholder actions from across the country where plaintiffs' counsel conferred non-monetary corporate benefits on behalf of shareholders. *See, e.g., Pompano Beach Police & Firefighters' Ret. Sys. v. Odyssey Healthcare, Inc.*, No. CC-10-03561-E, slip op. at 7 (Dallas Cnty. Tex. May 18, 2012) (awarding fees and expenses of $675,000 for additional disclosures); *Call4U, Ltd. v. Goodman Global, Inc.*, No. 2007-66888, slip op. at 5 (Harris Cnty. Tex. May 13, 2009) (awarding $890,000 for additional disclosures and amendment to merger agreement); *In re UICI S'holders Litig.*, No. 05-09693, slip op. at 5 (Dallas Cnty. Tex. Nov. 16, 2006) (awarding $950,000 for disclosures and reduction in termination fee); *Nichting v. DPL, Inc.*, No. 3:11-cv-141 (S.D. Ohio Feb. 24, 2012) ($700,000 for disclosure-only settlement); *Collier v. Brightpoint, Inc.*, C.A. No. 1:12-cv-1016 (TWP)(DKL) (S.D. Ind. May 1, 2013) ($600,000 for disclosure-only settlement); *Berens v. Marshall & Isley Corp.*, et al., No. CV 021273 (Milwaukee Cnty. Cir. Ct. Wis. June 19, 2012) (awarding negotiated fee of $695,000 for additional disclosures contained in a Form 8-K); *In re Aeroflex S'holders Litig.*, No. 003943/2007, slip op. Nassau Cnty., N.Y. June 30, 2009) (awarding $850,000 fee for additional disclosures contained in proxy statements); *Plumbers Local #65 Pension Fund v. Nicor Inc.*, No. 10-CH-52627, slip op. at 4 (Cook Cnty. Ill. Cir. Ct. Dec. 7, 2011) (awarding fees and expenses of $675,000 for additional disclosures); *Stein v. Pactiv Corp.*, No. 10-CH-35455, slip op. at 4 (Cook Cnty. Ill. Cir. Ct. Apr. 26, 2011) (awarding fees and expenses of $860,000 for additional disclosures); *IBEW Local 164*

*Pension Fund v. Hewitt Assocs., Inc.*, No. 10 CH 31612, slip op. at 3-4 (Cook Cnty. Ill. Cir. Ct. Feb. 15, 2011) (awarding fees and expenses of $850,000 for additional disclosures).

Additionally, the rates charged by Plaintiffs' Counsel are commensurate with the rates customarily charged by attorneys who actively litigate the complex and specialized practice area of shareholder actions.[10] *See* the time and expense affidavits, Bilek Decl., Exs. 4-6; *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984) (noting that reasonable fees should be calculated according to the prevailing market rates in the relevant community); *Hensley*, 461 U.S. at 447 ("Market standards should prevail."). "The Supreme Court in *Blum v. Stenson* . . . held that 'reasonable fees . . . are to be calculated according to the prevailing market rates in the relevant community,' *i.e.*, where counsel maintain their office . . ." *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) (citing *Blum*, 465 U.S. at 895); *see also Spencer v. Comserv Corp.*, No. 4-84-794, 1986 U.S. Dist. LEXIS 15863, at *32-33 (D. Minn. Dec. 30, 1986) ("Compensating a nationally recognized securities class action attorney at his hourly rate is entirely appropriate.").

Such rates necessarily reflect the reputation, experience, care, and successful record of Plaintiffs' Counsel. "[T]he 'requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation,'" and, therefore, the rates are presumptively reasonable. *Powell v. Comm'r of Internal Revenue,* 891 F.2d 1167, 1173 (5th Cir. 1990) (quoting *Blum*, 465 U.S. at 895-96 n.11); *see also Major v. Treen*, 700 F. Supp. 1422, 1434 (E.D. La. 1988) ("As the Supreme Court decisions have also made clear, experienced and expert attorneys who exhibit a high degree of skill have the right to

---

[10] *See National Law Journal 2013 Billing Survey* (reporting average partner billing rates between $230 and $1,055 per hour; and average associate billing rates between $195 and $670 per hour). The requested award, less expenses, would represent an hourly rate of $580. Bilek Decl. at ¶ 39.

have those factors calculated into the hourly rates.") (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986)).

### C. The Experience, Reputation, and Ability of the Lawyers Performing the Services, the Time Limitations, and the Preclusion of Accepting Other Employment

The experience, reputation, and ability of Plaintiffs' Counsel support an award of attorneys' fees. It took considerable skill to achieve the Settlement. Specifically, to successfully litigate the Consolidated Action, Plaintiffs' Counsel had to possess expertise in corporate law governing fiduciary duties of the officers and directors, the federal securities law, as well as the knowledge to distill and analyze facts giving rise to Plaintiffs' claims from the hundreds of pages of public and confidential documents that Plaintiffs' Counsel reviewed. Plaintiffs' Counsel are all well-respected law firms with extensive experience in class and shareholder litigation, thus giving them the ability to effectively advocate for Plaintiffs and pursue their claims. *See* Bilek Decl., Exs. 4-6.

The combined talents of Plaintiffs' Counsel allowed them to advance claims and theories of liability to pursue the Consolidated Action, obtain the information they needed to analyze the strength and weaknesses of these claims, and bring Defendants to the negotiating table, all to the benefit of the Settlement Class. Through their efforts, Plaintiffs' Counsel were able to inform MetroCorp's stockholders of previously undisclosed material information, including critical information concerning Sandler O'Neill's financial analyses, which supported its fairness opinion, and the process leading to the execution of the Merger Agreement.

The efforts of Plaintiffs' Counsel were not conducted in a vacuum. Aligned against them were some of the most prominent defense counsel in the country, equally knowledgeable of federal and Texas law and fully capable of capitalizing any misstep or weakness, who could draw upon the exceptional resources of their well-regarded regional and national law firms. The

skills and abilities of defense counsel are factors that may be considered in evaluating a fee request. *See, e.g.*, *In re Delphi Corp. Sec., Deriv. & ERISA Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008).

Additionally, Plaintiffs' Counsel's acceptance of the prosecution of the Consolidated Action necessarily precluded them from devoting resources to other litigation and the prosecution of additional cases, especially when viewed in light of the time constraints the Consolidated Action imposed on Plaintiffs' Counsel.

In sum, these factors warrant an award of reasonable attorneys' fees.

### D. The Time and Labor Required, the Novelty and Difficulty of the Questions Involved, and the Skill Requisite to Perform the Legal Service Properly

As discussed *supra*, the legal and factual issues were complex and required Plaintiffs' Counsel to use great skill in evaluating Plaintiffs' claims under tremendous time constraints. To pursue Plaintiffs' claims, Plaintiffs' Counsel expended over 700 hours of attorney and paralegal time in prosecuting the Consolidated Action on behalf of the Class. *See* Bilek Decl. at ¶¶ 38-39 and Exs. 4-6. The work reflected was necessary, performed without duplication to the extent possible, and successfully resulted in the Settlement. As indicated, the regularly hourly rates of Plaintiffs' Counsel (which, as discussed *supra*, are within the range charged by attorneys in similar actions) results in a total lodestar of $413,042.50. *Id.* *See also In re Dell, Inc., Sec. Litig.*, No. A-06-CA-726-SS, 2010 U.S. Dist. LEXIS 58281, at *39 (W.D. Tex. June 11, 2010) ("[T]he lodestar method [asks the court to] multiply[] the number of reasonable hours expended by a reasonable hourly rate and applying a lodestar multiplier."). After deduction of all expenses (if approved) from the agreed upon payment of $425,000.00, there is a balance of $408,381.12 remaining for payment of attorneys' fees. Billek Decl. at ¶¶ 38-39. This results in the slightest *negative* multiplier of .9887 from the total lodestar amount. *Id.* In addition, the fee and expense

award represents an average hourly rate (net expenses) of approximately $580.00 based on the lodestar figures above, further supporting the reasonableness of the fee. *Id.* These amounts are comparable to awards in other analogous cases, and are reasonable, especially given the substantial and multiple benefits provided to the Class through the Additional Disclosures.

### E. Plaintiffs' Counsel Litigated the Consolidated Action on a Fully Contingent Basis

Courts in the Fifth Circuit recognize that the contingent nature of the fee also must be taken into account in awarding attorneys' fees. *See In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 U.S. Dist. LEXIS 6621, at *21 (E.D. La. May 18, 1994) (contingent fee awards should "fairly and adequately compensate counsel . . . . for the risks of pursuing such litigation and the benefits which would not otherwise have been achieved but for their persistent and diligent efforts"); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718-19 (5th Cir. 1974); *McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967) ("[T]he effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services.").

When Plaintiffs' Counsel undertook representation in this case on a wholly contingent basis, it was with the expectation that they would devote many hours of hard work, likely on a compressed time-frame, to the prosecution of a difficult case, without any assurance of receiving fees or even reimbursement for their out-of-pocket expenses. Accordingly, this factor supports the requested fee award.

## VII. CONCLUSION

Lead Plaintiffs respectfully request that the Court enter the accompanying Final Approval Order, thereby (a) finally approving the Settlement; (b) finally certifying the Settlement Class for

settlement purposes; and (c) approving Plaintiffs' request for reasonable attorneys' fees and reimbursement of expenses.

DATED: October 18, 2014.

Respectfully submitted,

*/s/ Thomas E. Bilek*

Thomas E. Bilek
TX Bar No.: 02313525/ SDTX Bar No. 9338
THE BILEK LAW FIRM, L.L.P.
700 Louisiana, Suite 3950
Houston, TX 77002
(713) 227-7720

Juan E. Monteverde
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, NY 10017
Tel.: 212-983-9330
Fax: 212-983-9331

*Attorneys for Plaintiff Hsin-Hui Kuo*

Evan J. Smith
Marc L. Ackerman
BRODSKY & SMITH, LLC
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
Tel.: 610-667-6200
Fax.: 610-667-9029

*Attorneys for Plaintiff Michael Paganini*

CERTIFICATE OF CONFERENCE

I certify that Plaintiffs' counsel has conferred with Defendants' counsel, who is not opposed to this motion.

*/s/ Thomas E. Bilek*
Thomas E. Bilek

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed via the Live District CM/ECF System on October 18, 2014, which caused an electronic copy of same to be served automatically upon all counsel of record.

*/s/ Thomas E. Bilek*
Thomas E. Bilek